FILED

2012 NOV 14  PM 12: 09

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY_____

1   Nina Ries, Esq. (SBN 218652)
    Ries Law Group
2   3231 Ocean Park Blvd., Suite 121
3   Santa Monica, California 90405
    Telephone:   (310) 399-9977
4   Facsimile:   (310) 399-8080
5   nina@rieslawgroup.com
6
    David Marek, Esq.
7   (*pro hac vice* admission anticipated NY3046109)
    James W. Halter, Esq.
8   (*pro hac vice* admission anticipated NY4046934)
9   Liddle & Robinson, L.L.P.
    800 Third Avenue
10  New York, New York 10022
11  Telephone:   (212) 687-8500
    Facsimile:   (212) 687-1505
12  dmarek@liddlerobinson.com
13  jhalter@liddlerobinson.com
    *Attorneys for Mr. Richard Dillon*
14
15              **UNITED STATES DISTRICT COURT**
                **CENTRAL DISTRICT OF CALIFORNIA**
16
17  RICHARD DILLON,                     Case No.  CV 12 9728 -SJO
                                                          (AJWx)
18                        Plaintiff,    **COMPLAINT FOR:**
19      vs.                             (1) COPYRIGHT INFRINGEMENT (17
                                            U.S.C. § 101 et seq.)
20  NBC UNIVERSAL, INC.; PAUL
    TELEGDY; DICK WOLF; MARK            (2) UNFAIR COMPETITION (CAL.
21  BURNETT; DAVID A. HURWITZ;              BUS. & PROF. CODE § 17200 *et seq.*)
22  UNIVERSAL TELEVISION
    NETWORKS, LLC; ONE THREE            (3) BREACH OF CONTRACT
23  TELEVISION, LLC; WOLF
    REALITY, LLC; and BILL'S           (4) INDUCING BREACH OF
24  MARKET & TELEVISION                     CONTRACT
25  PRODUCTIONS,
                                        (5) CONSPIRACY
26                        Defendants.
                                        **WITH JURY DEMAND**
27
28

Plaintiff, Richard Dillon, by his attorneys, Ries Law Group and Liddle & Robinson, L.L.P., for his Complaint against Defendants NBC Universal ("NBC"), Paul Telegdy, Dick Wolf, Mark Burnett, David A. Hurwitz, Universal Television Network, Inc. ("Universal"), One Three Television, LLC ("One Three"), Wolf Realty LLC ("Wolf LLC"), and Bill's Market & Television Production ("BMTP") (collectively referred to as "Defendants") hereby brings claims seeking relief for, among other things, copyright infringement, statutory unfair competition, breach of contract, and conversion.

## SUMMARY OF THE ACTION

1.     While Defendants claim that their television show "Stars Earn Stripes" is a tribute to America's heroic military, law enforcement personnel, and first responders, the great shame underlying the production of this show is that it was stolen from an actual law enforcement person – Richard Dillon, a former NYPD detective.

2.     After an email exchange during which David Hurwitz invited Mr. Dillon – a former NYPD detective and first responder – and his colleague Jonathan Moss to present him with pitch material for Mr. Dillon's show "Celebrity Seals," on August 20, 2011, Mr. Hurwitz was sent a written treatment for the television show "Celebrity Seals."  Mr. Hurwitz praised the show – which was a reality television show pitting celebrities against one another "in a grueling and

intense series of competitive events that have been carefully designed to mimic the training that actually takes place during Navy SEAL School." According to Mr. Dillon's pitch material, "Each celebrity will have a personal coach (e.g., former SEAL) [and] [t]hey are competing to win a $100,000 check that will be donated to the charity of their choice." Mr. Dillon's pitch, attached hereto Exhibit A, goes on to explain "Celebrity Seals" in more detail.

3. Mr. Hurwitz thought so highly of Mr. Dillon's show, that he discussed making the show with an NBC executive. Mr. Hurwitz then untruthfully reported back to Mr. Dillon and Mr. Moss that NBC "thought ['Celebrity Seals'] was cool but that it felt too niche and cable for them ..."

4. Almost immediately thereafter, Defendants stole Mr. Dillon's show and began production of the show, renaming it "Stars Earn Stripes." In every meaningful way, "Stars Earn Stripes" is an exact replica of "Celebrity Seals."

## JURISDICTION AND VENUE

5. This Complaint arises under the federal Copyright Act, 17 U.S.C. §§ 101 et seq., as amended, and the statutory and common law of the State of California.

6. This Court has personal jurisdiction over all defendants by reason of their doing business in the State of California and in this district and their commission of unlawful acts within or without the State of California, having consequences within the State of California and this district.

7.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 (federal question) and 1367 (supplemental jurisdiction). The amount in controversy exceeds $75,000.

8.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims asserted herein occurred in this District. Venue is also proper under 28 U.S.C. § 1391(b)(1) because Defendants are subject to personal jurisdiction in this District and therefore "reside" in this District as that term is defined in 28 U.S.C. § 1391(c).

## THE PARTIES

9.     Dillon is an individual who is a citizen of, and resides in, New York. Mr. Dillon is a former New York City police officer and detective, serving in the New York Police Department for 20 years. In this role, Dillon received numerous commendations for bravery and excellence, including the NYC Police Foundation award of excellence, the Chief of Detectives achievement award and the Plumsock fund award (conferred by the Mayor of New York City). Dillon has worked as a consultant and technical advisor for numerous television shows.

10.     NBC Universal, Inc. ("NBC") is a corporation organized under the laws of Delaware and maintains its principal places of business in New York, New York and Los Angeles, California. NBC produces and broadcasts television programming through-out the United States. NBC broadcasted Dillon's show under the name "Stars Earn Stripes."

11.     Universal Television Networks, LLC ("Universal") is a limited liability company organized under the laws of California.  Universal is a studio that produces television shows and maintains its principal place of business in Los Angeles, California.  Universal produces the show "Stars Earn Stripes."

12.     One Three Television, LLC ("One Three") is a limited liability company organized under the laws of Delaware.  One Three is a television production company operated by Mark Burnett, with its principal place of business in California.  One Three is a producer of "Stars Earns Stripes."

13.     Wolf Reality LLC ("Wolf LLC") is a limited liability company organized under the laws of California and with its principal place of business in California.  Wolf LLC is a television production company operated by Dick Wolf.  Wolf LLC is a producer of "Stars Earns Stripes."

14.     Bill's Market & Television Productions ("BMTP") is a corporation organized under the laws of California and with its principal place of business in California.  BMTP is a television production company owned and operated by David Hurwitz.  According to the Articles of Incorporation, Hurwitz is the only officer of BMTP.  BMTP is a producer of "Stars Earns Stripes."

15.     Paul Telegdy is a citizen of and resides in California.  Telegdy is a producer of "Stars Earn Stripes."

16.     Burnett is a citizen of and resides in California.  Burnett is a producer of "Stars Earn Stripes."

17.    Wolf is a citizen of and resides in California.  Wolf is a producer of "Stars Earn Stripes."

18.    Hurwitz is a citizen of and resides in California.  Hurwitz is a producer of "Stars Earn Stripes."

## FACTS

19.    In or around May 2011, Dillon conceived a novel idea for a television series titled "Celebrity SEALS".  The concept for the series was as follows:

- "Celebrity SEALS" is a reality show that pits celebrities from television, film and sports in grueling and intense series of competitive events designed to mimic the training that actually takes place during Navy SEAL School;

- Each celebrity would have a personal coach (e.g., formal SEAL) to assist and teach the celebrity in the performance of the event;

- "Celebrity SEALS" is an elimination show, and the show expects that many of the celebrities would drop out prior to completion because of the physical and mental demands of the tasks, which included:  heavy weapons qualification; underwater demolition; drown proofing; hostage recovery; immediate action drills, over-the-beach scenarios, and ambush techniques, repelling into hostile environments and sniper lessons;

- "Celebrity SEALS" also intends to feature the behind-the-scenes drama of the celebrities as they are asked to behave in a regimented manner under the supervision of their coaches;

- The celebrities considered for "Celebrity SEALS" include celebrities from TV, film and sports, including fitness buffs and/or excellent athletes or a humorous juxtaposition, chosen to ensure interesting story lines;

- "Celebrity SEALS" would have a host who was a retired SEAL; and

- The celebrities would compete for a $100,000 cash prize to be given to a charity.

20.    Dillon registered his written materials for the show Celebrity SEALS with the Writers Guild of America East, Inc. on May 19, 2011.   The Registration Number is 1228782.   Dillon also registered the materials with the United States Copyright Office on June 23, 2012.   The United States Copyright Office assigned the materials Registration Number PAu 3-623-122.

21.    After creation of "Celebrity SEALS," Dillon and Moss attempted to contact television producers for the purpose of acquiring, producing, and broadcasting "Celebrity SEALS."

22.    In June 2011, Moss contacted Chuck LaBella, a television producer, to discuss "Celebrity SEALS."   After discussions about the idea for the

show, Mr. LaBella requested that Moss send him the written treatment for "Celebrity SEALS."

23.   On June 10, 2011, Moss sent LaBella the "Celebrity SEALS" treatment.

24.   On July 19, 2011, LaBella informed Moss that, while he thought "Celebrity SEALS" was a great idea, LaBella "just [did] not have the resources to put it together."   On this same email, LaBella suggested that Moss contact "my friend David Hurwitz ... the man behind 'Fear Factor,'" another reality show broadcast by NBC.

25.   Moss and Dillon believed that Hurwitz had an agreement with NBC whereby he would either produce shows for the network or, at least, had the opportunity to present shows to NBC.   Indeed, upon information and belief, Hurwitz is under contract with NBC.

26.   On August 14, 2011, Moss sent an email to Hurwitz, introducing himself and asking whether Hurwitz "would be open to discussing a reality project about which Chuck [LaBella] was quite enthusiastic. His words – 'a million dollar concept.'"   In this email, Moss stated explicitly that he worked in the television industry and that he and Dillon were pitching this creative idea for compensation and as part and parcel of Plaintiff's livelihood and business.

27.   Later that same day, Hurwitz responded to Moss.   In his response, Hurwitz – who worked in the entertainment business and at all relevant

times knew that (a) writers-creaters pitch creative ideas to prospective purchasers with the object of selling those ideas for compensation and (b) it was standard in the entertainment industry for ideas to be pitched with the expectation of compensation in the event of use – requested that Moss meet with him (Hurwitz) for the express purpose of pitching Dillon's television show.

28.   On Wednesday, August 17, 2011, Moss, Hurwitz, and Dillon agreed to speak on a conference call on Friday, August 17, 2011 for the stated and express purpose of pitching the show "Celebrity SEALS."  It was understood that Dillon and Moss were pitching those ideas with the object of persuading Hurwitz and NBC to purchase those ideas for commercial development, and/or to employ Dillon in the production of those ideas.

29.   On Friday, August 17, 2011, Moss and Hurwitz met via conference call.   On this call, Moss told Hurwitz Dillon's idea for "Celebrity SEALS."  Among other things, Hurwitz was told that "Celebrity SEALS" was intended to be a competition reality television show that pitted celebrities against one another in events designed to mimic the training that actually takes place during Navy SEAL School.   Hurwitz was also told that the celebrities would live in barracks, be eliminated based on their performance in these events, have former SEAL coaches, and would give their $100,000 winnings to charity.   Moss also told Hurwitz their ideas for which celebrities (and types of celebrities) would be suitable contestants and who might make for a good host (a former SEAL).

30.    On this call, Hurwitz praised the idea for "Celebrity SEALS." He did not tell Dillon or Moss, directly or indirectly, that either he or NBC had or were developing a similar show.

31.    Immediately after this call, Hurwitz sent an email to Moss which stated, "I look forward to reading the treatment and seeing if we can't make something happen."

32.    The next day (August 20, 2011), Moss sent Hurwitz an email which stated, "It was a pleasure speaking with you yesterday.  Rich and I are thrilled you think Celebrity Seals has strong upside potential."  Attached to this email was Dillon's written treatment for "Celebrity SEALS."  The written treatment is attached hereto as of Exhibit A.

33.    Just as with the conference call, the express purpose of sending this material to Hurwitz was to pitch creative ideas to Hurwitz and NBC for a television series.  It was understood that Dillon and Moss were pitching those ideas with the object of persuading Hurwitz and NBC to purchase those ideas for commercial development, and/or to employ Dillon in the production of those ideas.

34.    The written treatment for "Celebrity SEALS" sets forth in detail the components of the show, including among other things its plot, themes, mood, setting, characters, sequence of events, and other concrete elements.

35.     Again, after receipt of these written materials, Hurwitz did not tell Dillon and Moss, directly or indirectly, that he either he or NBC had or were developing a similar show.

36.     On August 28, 2011, Moss emailed Hurwitz again "to see if you were able to briefly speak with NBC about Celebrity Seals."

37.     Later that same day (August 28), Hurwitz responded, "amazing timing ... just leaving a stunt test where I bounced it off the exec that covers our show [Fear Factor, which airs on NBC].  He said that he thought it was cool but that it felt too niche and cable for them ..."

38.     After receiving this email, Moss responded to Hurwitz, "Is this a project you'd like to stay involved with at this time?"

39.     The following day (August 29), Hurwitz wrote, "as much as I'd like to jump in with you I am a little too busy right now with Fear Factor to do right by you.  Best of luck and feel free to use me as a sounding board as you move forward ..." The series of e-mails with Hurwitz is attached hereto as Exhibit B.

40.     Unbeknownst to Dillon, Hurwitz and NBC and, upon information and belief, the other Defendants, misappropriated Dillon's show and secretly produced and broadcast their own television series based on Dillon's show and ideas.

41.     Without Dillon's knowledge or consent, Defendants produced a television series titled "Stars Earn Stripes" based upon and utilizing the detailed

ideas and story lines Dillon and Moss had pitched as "Celebrity SEALS." The "Stars Earn Stripes" series utilized the following ideas that were misappropriated form Dillon's show:

- "Stars Earn Stripes" is an elimination reality television show that pits celebrities against one another in competitive events designed to mimic military training exercises.

- Although the show claims to include branches of the armed services in addition to the Navy SEALS, the events featured on the "Stars Earn Stripes" are exactly the same, or nearly identical, to the events set forth in Dillon's written material, such as the use of heavy weapons and learning the techniques of a sniper;

- In addition, on "Stars Earn Stripes," each celebrity has a personal coach who was a former military or law enforcement personnel, and two of the coaches are Navy SEALs. Even though each coach is not a former Navy SEAL, it is apparent that "Stars Earn Stripes" attempts to depict the coaches as having the same characteristics (e.g., physically tough, exceptionally well-trained in military tactics, and a physically imposing demeanor one would expect in a former Navy SEAL) as a former Navy SEALS.

- It also is set in a military-style barracks.

- The show is further hosted by a former high-ranking military personnel who has "the 'it' factor." (Exhibit A at 3.)
- Both shows also require that the winning celebrity give his/her $100,000 prize money to charity.

In short, "Stars Earn Stripes" and "Celebrity SEALS" are virtually identical.

42.    In around August 2012, Dillon learned that Defendants had decided to produce and broadcast "Stars Earn Stripes" beginning on August 13, 2012.

43.    Defendants have deceived the public by falsely stating that individuals other than Dillon created "Stars Earn Stripes."

44.    Defendants continue to produce and broadcast episodes of "Stars Earn Stripes."

45.    At no time did Defendants ever request or obtain Dillon's consent to use Celebrity SEALS.  Defendants have not compensated Dillon for the value of his contributions.  Using Dillon's series concepts, Defendants have made, or will make, millions.  Dillon, on the other hand, has received nothing out of "Stars Earn Stripes."

**FIRST CAUSE OF ACTION**

**(Dillon Against All Defendants For Copyright Infringement)**

46.    Dillon repeats and incorporates by reference the allegations set forth in the Complaint, as if set forth herein.

47.  Dillon is, and at all relevant times has been, the copyright owner of the exclusive rights under United States copyright laws with respect to certain written works, including the written treatment of "Celebrity SEALS" (referred to as "the Work").

48.  The Work has been issued a Certificate of Registration by the Writer's Guild of America.  On June 23, 2012, the United States Copyright Office registered Dillon's work entitled "Celebrity SEALS" and issued it registration number PAu 3-623-122.

49.  Dillon reserved all rights in his Work under United States copyright laws.  As such, Dillon owns the exclusive rights to prepare derivative works based upon the copyrighted work, distribute copies of the copyrighted work, and display the copyrighted work publicly.

50.  Defendants, collectively and/or individually, are engaging, and have engaged, in the unauthorized use and violation of the Plaintiffs' exclusive rights in the Work, including unauthorized first publication, production, sale, exploitation, and distribution, of the television program entitled "Stars Earns Stripes," and the unauthorized distribution, publication, reproduction, and preparation of other products derived from Dillon's copyright protected Work.

51.  In part, the Defendants' unauthorized use of Dillon's Work includes the production of the television program entitled "Stars Earn Stripes," and the distribution, and dissemination of portions of Dillon's Work through

advertising, media sales, and ancillary merchandising and marketing as well as dissemination of Dillon's Work through the Internet.

52.     Dillon has been informed and believes that the Defendants collectively, and/or individually, without permission, or consent of Dillon, have used, and continue to use the Work to produce and advertise the production of "Stars Earn Stripes." In doing so, Defendants have violated Dillon's exclusive copyrights including reproduction, first publication, and distribution. Defendants' action, together, and/or individually, constitute infringement of Dillon's copyrights and exclusive rights under copyright.

53.     Dillon has been informed and believes that Defendants, collectively, or each of them, have unlawfully reproduced the Work and/or created derivative works based on the Work without permission of the Plaintiff's copyright ownership rights.

54.     That foregoing acts of infringement have been willful and intentional, in disregard of and indifference to the rights of Dillon.

55.     As a result of Defendants' infringement of Dillon's copyright and exclusive right under copyright, Dillon is entitled to statutory damages pursuant to 17 U.S.C. § 504(c) for Defendants' infringement of each of the Copyrighted works. Dillon is further entitled to his attorneys' fees and costs pursuant to 7 U.S.C. § 505.

56. Defendants' conduct also constitutes contributory and vicarious copyright infringement of Dillon's copyrights.

57. Defendants have engaged in, and continue to engage in the business of knowingly and systematically inducing, causing, and/or materially contributing to the violation of Dillon's exclusive copyrights. The acts of infringement by the Defendants have been willful, intentional, and purposeful, in reckless disregard of, and indifference to the rights of Dillon.

58. Defendants have had, and continue to have, the right and ability to supervise and/or control the infringing conduct of the Defendants, but have failed and refused to exercise such supervision and/or control. As a direct and proximate result of such failure and refusal, Defendants and their advertisers, agents, assigns, and contracting parties, including Defendants, have infringed on Dillon's copyright in the Work, and Defendants, and each of them, have derived a direct financial benefit from the infringements.

59. The acts of infringement by Defendants have been willful, intentional, and purposeful, in reckless disregard of, and with indifference to, the rights of Dillon.

60. Defendants' conduct is causing, and unless enjoined and restrained by this Court, will continue to cause, Dillon certain great and irreparable injury that may not be able to be fully compensated in money; and for those damages, Dillon may have no adequate remedy at law. In connection with conduct

1   of Defendants causing specific damages to Dillon for which there is no adequate

2   remedy at law, Dillon is entitled to injunctive relief prohibiting further

3

4   infringements of Dillon's rights pursuant to 17 U.S.C. § 502.

5       61.   As a direct and proximate result of the infringement by

6   Defendants of Dillon's exclusive rights, Dillon is entitled to actual damages and

7

8   Defendants' profits pursuant to 17 U.S.C. § 504(b).

9       62.   Alternatively, Dillon is entitled to the maximum statutory

10  damages, pursuant to 17 U.S.C. § 504(c).

11

12              **SECOND CAUSE OF ACTION**

13  **(Dillon Against All Defendants For Unfair Competition Pursuant To**

14

15      **California Business And Professions Code § 17200)**

16      63.   Dillon repeats and incorporates by reference the allegations set

17  forth in the Complaint, as if set forth herein.

18      64.   The acts and omissions of Defendants alleged in this Complaint

19

20  constitute unlawful and unfair business practices, in violation of California

21  Business & Professions Code § 17200 *et seq.*

22      65.   Defendants' unlawful business practices include, without

23

24  limitation, Defendants' infringement of Dillon's copyright interests, acts of

25  conversion, inducement of breach of contract, and other wrongs described herein.

26

27

28

66.     Defendants also unfairly interfered with Dillon's ability to compete by infringing his copyright interests, and diluting the value of Dillon's interest in "Celebrity SEALS."

67.     This conduct was unfair because it offends established public policy and was immoral, unethical, and unscrupulous.   Specifically, Defendants have conspired to develop, film, and produce a show ("Stars Earn Stripes") that is a direct copy of "Celebrity SEALS" and intentionally lied to Dillon that neither NBC nor Hurwitz was interested in working on, or producing, "Celebrity SEALS" as part of an effort to steal Dillon's Work.   Defendants have been put on notice that their conduct violates federal and state law, and have refused to alter such conduct.   This conduct, as well as other conduct identified herein, constitutes unfair business practices in violation of California Business & Professions Code § 17200 *et seq.*

68.     Defendants have acted deliberately with the intent to unfairly benefit from Dillon's Work.

69.     As a result of Defendants' conduct, Defendants have been or will be unjustly enriched in an amount to be proven at trial, for which Dillon seeks restitution.

70.     The unlawful and unfair business practices undertaken by Defendants have caused irreparable harm to Dillon for which Dillon has no adequate remedy at law, and those unlawful business practices will continue to cause such irreparable harm unless restrained by this Court.

## THIRD CAUSE OF ACTION

### (Dillon Against Defendants Hurwitz, NBC, and Universal For Breach Of

### Contract)

71.    Dillon repeats and incorporates by reference the allegations set forth in the Complaint, as if set forth herein.

72.    Dillon prepared, and with assistance from Moss, submitted novel ideas for a television series ("Celebrity SEALS"), including an oral presentation and a written treatment to Hurwitz and NBC.

73.    In the entertainment industry, television story pitches are intended to among other things, interest studios or producers in purchasing those ideas and turning them into a series for commercial broadcast.  Hurwitz and NBC voluntarily accepted Dillon's ideas knowing full well that Dillon had submitted those ideas in confidence and for economic gain, and with the clear expectation of payment in the event those ideas were utilized by Hurwitz and/or NBC in a production series, or other commercial setting.  When Hurwitz and/or NBC agreed to meet with Dillon and/or Moss to discuss "Celebrity SEALS" and then requested and accepted the written Work, Hurwitz and NBC made it clear that they were interested in the "Celebrity SEALS" concept for possible production of a series.

74.    Hurwitz and NBC had an opportunity to reject the ideas either on the telephone call, before receipt of the written Work, or even after receipt of the

1  written Work.  Instead, Hurwitz and NBC accepted Dillon's ideas and turned them

2  into an enormously valuable series called "Stars Earn Stripes."

3
4        75.    Defendants produced and broadcasted "Stars Earn Stripes"

5  without compensating or crediting Dillon, thereby continuing its breach of

6  contractual obligations owed to Dillon.

7
8        76.    Using Dillon's series concepts, as told to Hurwitz and NBC and

9  embodied in the written Work, Hurwitz and NBC have made, or will make,

10 millions of dollars in profit.  As a direct and proximate result of Defendants'

11
12 actions, Dillon has been damaged in an amount to be determined at trial, and is

13 believed to exceed several million dollars, including but not limited to, the value of

14 Dillon's ideas, and loss of a share of the profits derived from his ideas.  Dillon's

15
16 losses are ongoing.  Dillon has also been deprived his rightful credits for creating

17 this show.

18
19            **FOURTH CASUE OF ACTION**

20   **(Dillon Against NBC, Universal, Telegdy, Wolf, Wolf LLC, Burnett, One**

21       **Three, and BMTP For Inducing Breach Of Contract)**

22
23        77.    Dillon repeats and incorporates by reference the allegations set

24 forth in the Complaint, as if set forth herein.

25        78.    Dillon and Hurwitz entered into a valid, binding contract that

26 required Hurwitz to compensate Dillon for the use of his ideas.

27

28

79.   Dillon was informed and believes that the other Defendants knew of the existence of this contract because, among other reasons, Hurwitz claimed that he informed NBC of the agreement.

80.   Dillon was informed and believes that, in connection with the development and production of "Stars Earn Stripes," the other Defendants intended to cause, and in fact caused, Hurwitz to breach his agreement with Dillon by encouraging Hurwitz to produce "Stars Earn Stripes", which is a direct copy of "Celebrity SEALS," without compensating or crediting Dillon.

81.   As a direct and proximate result of Defendants' inducing Hurwitz to breach his contract with Dillon, Dillon has been damaged in an amount to be proved at trial.

82.   This knowing and purposeful disregard for Dillon's rights is oppressive and malicious.  Dillon is informed and believes that officers, directors, or managing agents of NBC, Wolf LLC, One Three, and BMTP either had advanced knowledge of these oppressive and malicious acts and consciously disregarded them or authorized, ratified, or perpetuated the oppressive and malicious acts themselves.  An a result of such conduct, Dillon is entitled to punitive damages pursuant to California Civil Code § 3294 in an amount to be proved at trial.

## FIFTH CAUSE OF ACTION

### (Dillon Against All Defendants For Conspiracy)

83.    Dillon repeats and incorporates by reference the allegations set forth in the Complaint, as if set forth herein.

84.    Dillon is informed and believes that in connection with the development and production of "Stars Earn Stripes," Defendants agreed to a common plan to, among other things, infringe on Dillon's copyright interest in "Celebrity SEALS" and commit other torts described herein.

85.    Dillon is informed and believes that Defendants had actual knowledge that such tortious conduct would occur and concurred in the scheme with knowledge of its unlawful purpose.

86.    Dillon is informed and believes that in agreeing to commit such tortious conduct against Dillon, Defendants acted for their own individual advantage by disclosing and exploiting Dillon's Work.

87.    As a direct and proximate result of Defendants' conspiracy to commit such tortious conduct, Dillon has suffered damages in an amount to be proved at trial.

88.    Defendants' conspiracy to commit tortious conduct against Dillon renders each of them liable for all acts taken by their co-conspirators before and after each defendant joined the conspiracy.

**WHEREFORE, Dillon prays for the following relief:**

A.    That the Court enter judgment in favor of Plaintiff and against Defendants on Plaintiff's first cause of action for copyright infringement, adjudge that Defendants have willfully infringed on plaintiff's federally protected copyrights, in violation of 17 U.S.C. § 501 *et seq.*, award general and special damages, interest and Plaintiff's attorneys fees, and enter an injunction thereon ordering that Defendants, and their officers, agents, representatives, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with defendants, be enjoined and restrained from:

        a. imitating, copying, or making any other infringing use or infringing distribution or broadcast of the Work and/or materials now or hereafter created which infringe upon the copyright in the Series;

        b. imitating, copying, or making any other infringing use or infringing distribution of broadcast of the Work and/or other materials now or hereafter created which infringe upon Plaintiff's other copyrights;

        c. manufacturing, assembling, producing, distributing, broadcasting, offering for distribution or broadcast, circulating, selling, offering for sale, advertising, importing, promoting, or displaying any television program, website or

related merchandise or service bearing any simulation, reproduction, counterfeit, copy, or colorable imitation of the Work;

d. using any simulation, reproduction, counterfeit, copy, or colorable imitation of the Work in connection with the manufacture, assembly, production, distribution, broadcast, offering for distribution or broadcast, circulation, sale, offering for sale, import, advertisement, promotion, or display of any television program, website or related merchandise or service not authorized or licensed by Plaintiff;

e. using any designation of origin or description which can or is likely to lead anyone to believe that any television program, website or related merchandise or service has been produced, manufactured, assembled, distributed, broadcast, offered for distribution or broadcast, circulation, sold, offered for sale, imported, advertised, promoted, displayed, licensed, sponsored, approved, or authorized by Plaintiff, when such is not true in fact;

f. using reproductions, counterfeits, copies or colorable imitations of the Work in the distribution, broadcast, offering

for distribution or broadcast, circulating, sale, offering for sale, advertising, importing, promoting, or displaying of any television programs, website or related merchandise or service not authorized or licensed by Plaintiff;

g.  engaging in any other activity constituting an infringement of any of Plaintiff's copyrights, or of Plaintiff's rights in, or right to use or to exploit, these copyrights; and

h.  assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (g) above.

B.   That the Court enter judgment in favor of Plaintiff and against Defendants on Plaintiff's second cause of action, and award special and general damages and Defendants' infringing profits thereon, plus interest, and enter an appropriate injunction;

C.   That the Court enter judgment for Plaintiff and against Defendants on Plaintiff's third cause of action, and award special and general damages and Defendants' infringing profits thereon, plus interest, and enter an appropriate injunction;

D.   That the Court enter judgment for Plaintiff and against Defendants on Plaintiff's fourth cause of action, and award special and general damages and

1  Defendants' infringing profits thereon, plus interest, and enter an appropriate

2  injunction;

3

4      E.      That the Court enter judgment for Plaintiff and against Defendants on

5  Plaintiff's fifth cause of action, and award special and general damages and

6  Defendants' infringing profits thereon, plus interest, and enter an appropriate

7

8  injunction; and

9      F.      That the Court should order such further or other relief as this Court

10 finds just.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>DEMAND FOR TRAIL BY JURY</u>

Plaintiff hereby demands a trial by jury for all issues so triable.

Dated:      Los Angeles, California
               November 7, 2012

                                   Ries Law Group

By: _____
                       Nina Ries, Esq.
               3231 Ocean Park Blvd., Suite 121
               Santa Monica, California 90405
               Telephone:   (310) 399-9977
               Facsimile:   (310) 399-8080
               nina@rieslawgroup.com

               and

               David Marek, Esq. (*pro hac vice*
               admission anticipated)
               James W. Halter, Esq.
               (*pro hac vice* admission anticipated)
               Liddle & Robinson, L.L.P.
               800 Third Avenue
               New York, New York 10022
               Telephone:   (212) 687-8500
               Facsimile:   (212) 687-1505
               dmarek@liddlerobinson.com
               jhalter@liddlerobinson.com
               *Attorneys for Mr. Richard Dillon*

**EXHIBIT A**

# EXHIBIT A









7 – 2011
CONFIDENTIAL

## Project Summary

When the President of the Unites States calls on the military to execute the most dangerous assignments, such as the assassination of Osama Bin Laden, he sends in the military's most physically powerful, courageous, and mentally strong men and women. Spending over a year in specialized training, which many cannot complete, these people, the toughest of the tough, become SEALs.

*Celebrity SEALS* pits celebrities from television, film and sports in a grueling and intense series of competitive events that have been carefully designed to mimic the training that actually takes place during Navy SEAL School. Each celebrity will have a personal coach (e.g. former SEAL), and after each event, they will be judged by a panel of experts (e.g. former SEALs, retired marines), including the show's host, with one being eliminated. The celebrities are competing to win a $100,000 check that will be donated to the charity of their choice.

*Celebrity SEALS* will be an elimination show, with one individual eliminated at the end of every episode. A panel of experts (e.g. former SEALs, retired marines) will choose two competitors to eliminate, using criteria such as physical performance, task accomplishments, skill-set growth, promise, effort, character and attitude. Once the two contestants are selected, the entire remaining group of celebrities will decide on the individual that will leave the show. For many of these celebrities, this will be the first time they have been asked to accomplish such difficult physical and mental tasks. In fact, the challenges are so mentally and physically demanding that, just like the real Navy SEAL program, we expect many of our celebrities to drop out prior to completion of the competition.

The following are some of the skills and challenges that could be included in the series:

- Surf Torture (Individuals endure hours of grueling exercises on the beach and in the surf.)
- Heavy weapons qualification
- Underwater Demolition (Individuals in snorkel gear must perform underwater demolition tactics.)
- Drown Proofing (Individuals must swim with their hands & feet tied.)
- Hostage Recovery (Individuals must repel into hostile environment and rescue hostages.)
- Immediate Action Drills, Over-The-Beach scenarios and ambush techniques, free-fall parachuting and sniper lessons.
- Hell Week: Five, twenty hour days in which people run more than 200 miles and sleep a total of just four hours.

## Practical Matters

### Jonathan Moss, Creator and Producer

Jonathan Moss is an award-winning entertainment executive and producer who has been involved with the development and/or production of over 70 film and television projects. As an independent producer and as an executive at Home Box Office (HBO), where he was the Director of Documentary Programming, he has worked with some of the industry's most highly acclaimed producers on programs that have earned 1 Academy, 14 Emmy, 5 Peabody, 10 CableAce, 2 DuPont, and 20 other major awards, as well as highly viewed programs such Taxicab Confessions, Real Sex and the Sports Illustrated Swimsuit specials. In addition, Moss was a partner of a production company in New York City that produced the Emmy award-winning series Gotham TV. He has also worked as a media consultant to international and domestic networks and production companies as well as start-up ventures, contributed to a published research study that focused on the international television business and spent time with Disney, Orion Classics and Jim Henson Productions. Moss is a graduate of Northwestern University.

### Richard Dillon, Creator and Producer

Rich Dillon has more than 30 years experience working in the field of law enforcement. As a former NYC police officer and detective he received over 20 commendations for bravery and excellence along with the NYC Police Foundation award of excellence, the Chief of Detectives achievement award and the Plumsock fund award (conferred by the Mayor of NYC). He has had assignments in units such as Anti-Crime, the Warrant Squad, Manhattan Robbery Squad, the Crime Stoppers Squad, the Special Frauds Squad and the Manhattan South Homicide Squad. A highly regarded public speaker and trainer, Rich has provided instruction to countless investigative agencies on numerous topics including: Interview and Interrogation, Methods of Investigation and Media Relations. Dillon has also brought his unique experience and skills to the entertainment field by acting as a consultant and technical advisor on such shows as America's Most Wanted, Unsolved Mysteries, Fighting Back, Case File, Missing Reward, Prime Suspect and local stations such as WABC, WWOR, FOX, WPIX, WNJU, and NY1. Dillon is a graduate of SUNY Empire State College.

2







7 – 2011
CONFIDENTIAL

## Beyond the Competition

**Behind-The Scenes**
Concurrent with the competition, *Celebrity SEALS* will also feature the behind-the-scenes drama of the celebrities as they live together in standard military barracks, and asked to behave in a regimented manner as well as do menial tasks, all under the supervision of their tough coaches.

**Cast of Celebrities**
Celebrities that consider themselves fitness buffs and/or excellent athletes, or perhaps, in a humorous juxtaposition, exactly the opposite, as well as the Coaches, will be chosen to ensure that all are sufficiently interesting to drive storylines. Personal lives will be also revealed. These people, while wanting to remain looking professional, know that they must perform for the camera. The following are individuals who are the type that could appear in *Celebrity SEALS*:

1. Mario Lopez (possible host)
2. Randy Couture (possible host)
3. Jesse Ventura (possible host)
4. Ronnie from Jersey Shore
5. David Hasselhoff
6. Lou Diamond Phillips
7. Danny Bonaduce
8. Dolph Lungren
9. Jose Conseco
10. Gary Busey
11. Pink
12. Demi Moore
13. Brooke Burke
14. Jennifer Grey
15. Drew Lachey
16. Mickey Rourke
17. Steve Austin
18. Chris Jericho

**Host**
A host has not been selected for *Celebrity SEALS*. However, there are many retired seals who may fit the profile and who have the 'it' factor. The following are examples. (They have not been evaluated or contacted since it is common for the commissioning network to be involved/make this vital casting decision.)

Rudy Boesch: This retired Navy SEAL became popular for his stint in the reality series Survivor: Borneo, and for being its oldest competitor. Moreover, he finished in 3rd place. He had an enviable record as a SEAL, and was a team leader, who had 45 years of uninterrupted military career.

Richard Machowicz: Richard "Mack" Machowicz was the host of the Discovery Channel and Military Channel show Future Weapons. According to the program's introduction, he spent ten years as a U.S. Navy SEAL, and now searches for new weapons and military technologies used in modern warfare. He is also proficient in many martial arts and a practitioner of Zen Buddhism. He will be the newest member on Spike's show, Deadliest Warrior.

Richard Marcinko: Ass-kicking Navy SEAL (a.k.a. Demo Dick, a.k.a Rogue Warrior, a.k.a. Shark Man of the Delta), Marcinko is one of the toughest men ever to serve our country. He is the author of the best selling Rogue Warrior series. Demo Dick is raw. "War, after all, is not Nintendo. War is not about technology or toys. War is about killing..."

Jesse Ventura: Jesse Ventura is a retired Navy SEAL, turned retired professional wrestler turned American politician who was the 38th Governor of the US State of Minnesota. He has also donned the role of an actor, radio host, and a television talk show host.

## Practical Matters

### About the Navy SEALS

(from Wikipedia, edited) The average United States Navy SEAL spends over a year in a series of formal training environments before being awarded the Special Warfare Operator Naval Rating and the Navy Enlisted Classification (NEC) 5326 Combatant Swimmer (SEAL). All Navy SEALs must attend and graduate from Basic Underwater Demolition/SEAL School, a basic parachutist course and then the SEAL Qualification Training program. All sailors entering the SEAL training pipeline with the Hospital Corpsman rating or those chosen by Naval Special Warfare Command must also attend Special Operations Combat Medic course before joining an operational team. Once outside the formal schooling environment SEALs entering a new Team at the beginning of an operational rotation can expect 18 months of training interspersed with leave and other time off before each 6-month deployment.

3

**EXHIBIT B**

# EXHIBIT B

david hurwitz <davidhurwitz1@mac.com>
Re: Check LaBella
August 15, 2011 3:36 PM

especially that Friday traffic from Jersey will really suck.
Let's jump on the phone Fri.  Let's pick a time Thurs.
speak to you soon -
David

On Aug 15, 2011, at 11:32 AM, Jonathan Moss <jon@mossonline.net> wrote:

> David:
>
> I'm in NJ...Encino is a bit of drive!
>
> How about a phone call?  What time is good for you?
>
> All the best.
>
> Sincerely,
> Jon
>
> Jonathan Moss
> jon@mossonline.net
> 917.969.5700
>
>
> On Aug 14, 2011, at 7:28 PM, david hurwitz wrote:
>
>> Hi Jonathan...
>> Any referral from Chuck is definitely worth the time.  I am shooting tonight and the next couple of nights so my world is gonna be upside down for the
>> first part of the week.
>> Are you available Friday to meet in the Encino area?  Let me know and we can confirm on Thursday.
>> Thanks,
>> David
>>
>>
>> On Aug 14, 2011, at 03:10 PM, Jonathan Moss <jon@mossonline.net> wrote:
>>
>>> Dear David:
>>>
>>> Per Chuck LaBella's suggestion, I am writing to introduce myself and to find out whether you would be open to discussing a reality project about
>>> which Chuck was quite enthusiastic. His words -- "a million dollar concept".
>>>
>>> I am a former Director of Documentary Programming at HBO and am currently working as a television producer and consultant, and I have been
>>> involved with programs that have garnered an Oscar as well as multiple Emmys, DuPonts and Peabodys. Other involvements, such as Taxicab
>>> Confessions, had strong ratings.
>>>
>>> Do you have time to speak this week?  Along with my partner Rich Dillon, we'll do our best to make time when you are available
>>>
>>> All the best.
>>>
>>> Sincerely,
>>> Jon
>>>
>>> Jonathan Moss
>>> jon@mossonline.net
>>> 917.968.5700

davidhurwitz1@mac.com
Re: Friday
August 18, 2011 8:46 AM

Looking forward to it...
------Original Message------
From: Moss Jonathan
To: David Hurwitz
Subject: Re: Friday
Sent: Aug 18, 2011 5:31 AM

David:

Great!

I will set up a conference call as the co-creator may also be able to join the conversation.

All the best.

Sincerely,
Jon

Jonathan Moss
jon@mossonline.net
917.968.5700

On Aug 17, 2011, at 8:02 PM, davidhurwitz1@mac.com wrote:

> Hey Jonathan -
> After 3pm my time works great...
> ------Original Message------
> From: Jonathan Moss
> To: David Hurwitz
> Subject: Friday
> Sent: Aug 17, 2011 4:45 PM
>
> David:
>
> I hope all is well.
>
> I am writing to formalize a time for Friday. We can leave it open and just try to connect, or 'pencil' a time in our calendars.
>
> What is best for you?
>
> Jon Moss
> Sent from my iPhone
>
> Sent from my Verizon Wireless BlackBerry

Sent from my Verizon Wireless BlackBerry

Moss Jonathan <jon@moessonline.net>
Re: Friday
August 20, 2011 10:10 AM

David:

It was a pleasure speaking with you yesterday.  Rich and I are thrilled you think Celebrity Seals has strong upside potential.

Attached is our quick, short proposal, as requested. (Please excuse typos, etc.) We would be pleased to redraft it based on your comments.

Please let me know that you received it.

All the best.

Sincerely,
Jon

Jonathan Moss
jon@moessonline.net
917.968.5700


On Aug 19, 2011, at 7:48 PM, david hurwitz wrote:

> nice chatting with you.  i look forward to reading the treatment and seeing if we can't make something happen...
> have a nice weekend -

> On Aug 17, 2011, at 04:43 PM, Jonathan Moss <jon@moessonline.net> wrote:

>> David:

>> i hope all is well.

>> I am writing to formalize a time for Friday. We can leave it open and just try to connect, or 'pencil' a time in our calendars.

>> What is best for you?

>> Jon Moss
>> Sent from my iPhone

Celebrity Se....pdf (5.4 MB)

Moss Jonathan <jon@mossonline.net>
Re: NBC
August 28, 2011 4:24 PM

David:

Thanks! It would be great to work together!

All the best.

Sincerely,
Jon

Jonathan Moss
jon@mossonline.net
917.968.5700


On Aug 28, 2011, at 11:31 AM, david hurwitz wrote:

Hey Jonathan,
as much as I'd like to jump in with you I am a little too busy right now with Fear Factor to do right by you.
Best of luck and feel free to use me as a sounding board as you move forward...
David

On Aug 28, 2011, at 04:28 PM, Jonathan Moss <jon@mossonline.net> wrote:

David:

Understood. Is this a project you'd like to stay involved with at this time?

Jon Moss
Sent from my iPhone

On Aug 28, 2011, at 4:53 PM, david hurwitz <davidhurwitz1@mac.com> wrote:

> amazing timing... just leaving a stunt test where I bounced if off the exec that covers our show.
> He said that he thought it was cool but that it felt too niche and cable for them...
>
> On Aug 28, 2011, at 12:57 PM, Jonathan Moss <jon@mossonline.net> wrote:
>
>> David:
>>
>> I hope all is well.
>>
>> I writing to see if you were able to briefly speak with NBC about Celebrity Seals?
>>
>> All the best.
>>
>> Jon Moss
>> Sent from my iPhone
>

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge S. James Otero and the assigned discovery Magistrate Judge is Andrew J. Wistrich.

The case number on all documents filed with the Court should read as follows:

## CV12- 9728 SJO (AJWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===========================================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [ ] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

Name & Address:
Nina Ries, Esq. (SBN 218652)
Ries Law Group, 3231 Ocean Park Blvd., Suite 121
Santa Monica, CA 90405
(310) 399-9977 F: 310-399-8080
nina@rieslawgroup.com

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| Richard Dillon | CASE NUMBER |
|---|---|
| PLAINTIFF(S) | **CV 12 9728** — SJO (ASWx) |
| v. | |
| NBC Universal, Inc.; Paul Telegdy; Dick Wolf; Mark Burnett; David A. Hurwitz; Universal Television Networks, LLC; One Three Television, LLC; Wolf Reality, LLC; and Bill's Market & Television Productions, DEFENDANT(S). | **SUMMONS** |

TO:     DEFENDANT(S):

A lawsuit has been filed against you.

Within ___21___ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _Nina Ries, Esq._____, whose address is _Ries Law Group, 3231 Ocean Park Blvd., Suite 121, Santa Monica, CA 90405_. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: ____NOV 1 4 2012_____

By: ____MARIL_____

Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

# ORIGINAL

Name & Address:
Nina Ries, Esq. (SBN 218652)
Ries Law Group, 3231 Ocean Park Blvd., Suite 121
Santa Monica, CA 90405
(310) 399-9977 F: 310-399-8080
nina@rieslawgroup.com

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| Richard Dillon | CASE NUMBER |
|---|---|
| PLAINTIFF(S) v. | CV 12 9728 —SJO (ATLux) |
| NBC Universal, Inc.; Paul Telegdy; Dick Wolf; Mark Burnett; David A. Hurwitz; Universal Television Networks, LLC; One Three Television, LLC; Wolf Reality, LLC; and Bill's Market & Television Productions, DEFENDANT(S). | SUMMONS |

TO:     DEFENDANT(S):

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _Nina Ries, Esq._____, whose address is _Ries Law Group, 3231 Ocean Park Blvd., Suite 121, Santa Monica, CA 90405_____.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: ___NOV 1 4 ???___

By: _____
                Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

| | |
|---|---|
| **I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)<br>Richard Dillon | **DEFENDANTS**<br>NBC Universal, Inc.; Paul Telgdy; Dick Wolf; Mark Burnett; David A. Hurwitz;<br>Universal Television Networks, LLC; One Three Television, LLC; Wlf Reality,<br>LLC; and Bill's Market & Television Productions |
| **(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br>Nina Ries, Esq., Ries Law Group, 3231 Ocean Park Blvd., Suite 121<br>Santa Monica, California 90405 (310) 399-9977 | **Attorneys** (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☒ No  ☒ **MONEY DEMANDED IN COMPLAINT: $** in excess of $75,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Copyright Act (17 U.S.C. § 101 et seq.) and other laws. Copyright infringement for theft of a television show.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☒ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | IMMIGRATION | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 245 Tort Product Liability | | | | |
| | ☐ 290 All Other Real Property | | | | |

## CV12 9728

**FOR OFFICE USE ONLY:**  Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)  CIVIL COVER SHEET  Page 1 of 2

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☒ No ☐ Yes
If yes, list case number(s):

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☒ No ☐ Yes
If yes, list case number(s):

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)
☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | New York |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County (all Defendants) | Delaware (place of incorporation of NBC Universal, LLC and One Three Television, LLC) |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County (all causes of action) |  |

\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _____   Date 11/7/2012

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |