1

**DAVIS WRIGHT TREMAINE LLP**
865 S. FIGUEROA ST.
SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
TELEPHONE (213) 633-6800
FAX (213) 633-6899

2

3

4

5

KELLI L. SAGER (State Bar No. 120162)
  kellisager@dwt.com
NICOLAS A. JAMPOL (State Bar No. 244867)
  nicolasjampol@dwt.com
KATHLEEN CULLINAN (State Bar No. 287604)
  kathleencullinan@dwt.com

6

7

8

Attorneys for Defendants NBCUniversal Media,
LLC, Dick Wolf, Mark Burnett, David A. Hurwitz,
Universal Television Networks, LLC, One Three
Television, LLC, Wolf Reality, LLC, and
Bill's Market & Television Productions

9

10

11

12

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

13

14

15

RICHARD DILLON,

                    Plaintiff,

16

        vs.

17

NBCUNIVERSAL MEDIA, LLC.;
DICK WOLF; MARK BURNETT;
DAVID A. HURWITZ; UNIVERSAL
TELEVISION NETWORKS, LLC; ONE
THREE TELEVISION, LLC; WOLF
REALITY, LLC; and BILL'S MARKET
& TELEVISION PRODUCTIONS,

                    Defendants.

18

19

20

21

22

23

24

25

26

27

28

) Case No. CV12 9728-SJO (AJWx)
)
)
)
) **DEFENDANTS' NOTICE OF**
) **MOTION AND MOTION TO**
) **DISMISS PLAINTIFF'S FIRST**
) **AMENDED COMPLAINT;**
) **SUPPORTING MEMORANDUM OF**
) **POINTS AND AUTHORITIES**
) **(F.R.C.P. 12(b)(6))**
)
) Hearing Date:    June 10, 2013
) Time:            10:00 a.m.
) Courtroom:       1 (2nd Floor)
)
) [Request For Judicial Notice;
) Declaration Of Kelli L. Sager,
) Declaration of Amanda Harrell with
) Exs. 1 Through 9, Declaration Of Saskia
) R. Thompson with Ex. 10, Declaration
) Of Kathleen Cullinan with Exs. 11
) Through 43, Notice Of Lodging Of Exs.
) 1 through 11, Notice Of Manual Filing;
) and [Proposed] Order Filed
) Concurrently]

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on June 10, 2013, at 10:00 a.m., in Courtroom 1 (2nd Floor) of the United States District Court for the Central District of California, located at 312 North Spring Street, Los Angeles, CA 90012, Defendants NBCUniversal Media, LLC ("NBCU"), Dick Wolf, Mark Burnett, David A. Hurwitz, Universal Television Networks, LLC ("UTN"), One Three Television, LLC, Wolf Reality, LLC, and Bill's Market & Television Productions ("Defendants") will and hereby do move to dismiss Plaintiff Richard Dillon's First Amended Complaint ("FAC") and each of its causes of action.

This Motion is made pursuant to Federal Rule of Civil Procedure 12(b)(6) on the following grounds:

1.     Plaintiff's First Cause of Action for copyright infringement fails to state a claim for which relief can be granted because there is no substantial similarity of protected expression between his treatment for a television program called "Celebrity SEALS" (the "Treatment"), and Defendants' television program, "Stars Earn Stripes" (the "Program").  <u>See</u> Memorandum, Section II.

2.     Plaintiff's First Cause of Action independently fails against defendants Wolf, Wolf Reality, Burnett, or One Three Television, because he has failed to allege <u>any</u> facts that would support a finding that these defendants had access to his Treatment, which is a necessary prerequisite to state a copyright claim against them. Moreover, because Plaintiff has failed to allege facts sufficient to establish that anyone at NBCU or UTN ever had access to the Treatment,[1] his First Cause of Action against NBCU and UTN fails for this independent reason.  <u>See</u> Memorandum, Section II.[2]

---

[1] Plaintiff alleges only that Hurwitz purportedly mentioned Plaintiff's program idea to an unidentified "exec" working on a different NBCU program.  No mention is made of the Treatment, or of UTN.

[2] If the copyright claim survives at all, it will be subject to dismissal on summary judgment, because the Program was independently created by the Wolf/Burnett

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

3.      Plaintiff's Second Cause of Action for unfair competition fails because none of the purportedly "unlawful business practices" that are alleged as the predicate for this claim can support a cause of action under California Business & Professions Code § 17200.  Specifically:

   a.  The allegation that Defendants breached and/or induced the breach of a purported implied oral contract with Plaintiff cannot be used to create tort liability under California's unfair competition statute, Bus. & Prof. Code § 17200.  See FAC ¶¶ 64, 65; Memorandum, Section III.A.

   b.  There are no "contract" or "inducement" claims made against defendants Wolf, Wolf Reality, Burnett, One Three Television, or Bill's Market & Television; consequently, such claims cannot serve as a predicate for an unfair business practices claim against these defendants for this independent reason.  See FAC ¶¶ 70-82.; Memorandum, Section III.A.

   c.  Plaintiff cannot maintain an unfair business practices claim based on the allegations that Defendants "converted" Plaintiff's Treatment (FAC ¶ 64) or that the Program "is a direct copy" of Plaintiff's Treatment (id.), because such claims are preempted by federal copyright law.[3]  See Memorandum, Section III.B.

---

Defendants, who never heard of Plaintiff and never had access to his Treatment or to his "ideas."  See, e.g., Three Boys Music Corp. v. Bolton, 212 F.3d 477, 485 (9th Cir. 2000).

   [3] Plaintiff's 17200 claim includes other pejorative language about Defendants' purportedly "unfair" conduct, including an unintelligible assertion that Defendants "intentionally lied to Dillon that [sic] neither NBC, Universal, nor Hurwitz was interested in working on, or producing" his Treatment "as part of an effort to steal Dillon's Work."  FAC ¶ 66.  This allegation also appears to assert that Defendants (or some of them) used Plaintiff's Treatment; consequently, assuming it states a claim at all as alleged, it would be preempted by the Copyright Act.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

d.  Plaintiff's only remaining allegation, that Defendants "represent[ed] that individuals other than Dillon created" the Program, is the kind of reverse-passing off claim that was foreclosed by the United States Supreme Court in <u>Dastar Corp. v. Twentieth Century Fox Film Corp.</u>, 539 U.S. 23, 123 S. Ct. 2041, 156 L. Ed. 2d 18 (2003).[4]  <u>See</u> Memorandum, Section III.C.

4.  Plaintiff's Second Cause of Action independently fails because he does not have any right to relief under Section 17200; consequently, his claim fails as a matter of law.  Cal. Code Civ. Proc. § 430.10(e)(f).  <u>See</u> Memorandum, Section III.D.

5.  Plaintiff's Third Cause of Action for breach of contract fails against NBCU and UTN because he has not alleged, and cannot allege, specific facts to support a finding that defendant Hurwitz had the authority to bind either NBCU or UTN in an implied oral contract with Plaintiff.  <u>See</u> Memorandum, Section IV.

6.  Plaintiff's Fourth Cause of Action for inducing breach of contract fails because the FAC does not sufficiently allege any intentional acts undertaken by NBCU or UTN that were designed to induce a breach of the purported implied oral contract Plaintiff claims to have had with defendant Hurwitz. Moreover, Plaintiff's allegation that NBCU or UTN are bound by a purported implied oral contract with him bars the inducement claim; a party cannot induce the breach of its own contract as a matter of law.  <u>See</u> Memorandum, Section V.

This Motion is based on the Notice Of Motion, the attached Memorandum Of

---

[4] Plaintiff's attempt to argue other, unspecified conduct as a basis for his 17200 claim should be rejected.  He is required to identify the <u>specific</u> conduct that he alleges to be the grounds for his unfair business practices claim.  <u>See, e.g.</u>, <u>Champlaie v. BAC Home Loans Servicing, LP</u>, 706 F. Supp. 2d 1029, 1062 (E.D. Cal. 2009) (complaint fails to provide notice of basis for unfair competition claim where defendants must "scour the remainder of the complaint to determine which, if any, of the allegations incorporated by reference provide the basis for this claim").

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

Davis Wright Tremaine LLP
865 S. Figueroa St, Suite 2400
Los Angeles, California 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Points And Authorities, the concurrently-filed Declaration of Kelli L. Sager, Declaration of Amanda Harrell with Exhibits 1 through 9, Declaration of Saskia R. Thompson with Exhibit 10, Declaration of Kathleen Cullinan with Exhibits 11 through 43, Request For Judicial Notice, and Notice Of Lodging With Exhibits 1 through 11; all other matters of which this Court may take judicial notice, the pleadings, files, and records in this action, and on such other argument as may be heard by this Court.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on March 8, 2013.[5]  Because lead counsel for Plaintiff is located in New York City and Defendants' counsel is located in Los Angeles, where the case is pending, the conference was conducted telephonically.  Sager Decl. ¶ 4. During this call, the parties discussed each of Defendants' grounds for this Motion To Dismiss, and attempted to eliminate the need for the motion.  Sager Decl. ¶ 5. Because the parties were unable to resolve the remaining disputes, this Motion follows.

Dated: March 15, 2013

DAVIS WRIGHT TREMAINE LLP
KELLI L. SAGER
NICOLAS A. JAMPOL
KATHLEEN CULLINAN


By: /s/ Kelli L. Sager
        Kelli L. Sager


Attorneys for Defendants NBCUniversal Media, LLC, Dick Wolf, Mark Burnett, David A. Hurwitz, Universal Television Networks, LLC, One Three Television, LLC, Wolf Reality, LLC, and Bill's Market & Television Productions

---

[5]  The parties also had a conference of counsel on February 1, 2013, in connection with Defendants' anticipated motion to dismiss Plaintiff's original complaint.  Sager Decl. ¶ 2.  Following that conference, Plaintiff agreed to file an amended complaint addressing some of the defects discussed during the parties' conference.  Id.  The First Amended Complaint ("FAC") was filed on February 22, 2013.  Sager Decl. ¶ 3.  Defendants now move to dismiss the FAC.  Sager Decl. ¶ 6.

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF CONTENTS

Page

I.   SUMMARY OF ARGUMENT ................................................................. 1

II.  PLAINTIFF'S COPYRIGHT CLAIM FAILS. ............................................ 2

   A.  Dismissal Is Required Where Works Are Not Substantially Similar. ............................................................................................. 2

   B.  The Purported Similarities Between Plaintiff's Treatment And The Program Cannot Support His Copyright Claim. ......................... 6

   C.  The Works Are Dissimilar As To Protected Expression .................... 8

III. PLAINTIFF'S CLAIM FOR UNFAIR COMPETITION SHOULD BE DISMISSED WITH PREJUDICE. ................................................. 12

   A.  Plaintiff's Unfair Competition Claim Cannot Be Based On The Alleged Breach Of A Purported Implied Contract. ........................... 12

   B.  Plaintiff's Allegations Of Converting And Copying Cannot Give Rise To A Claim Under Section 17200. ........................................ 14

   C.  Plaintiff's Allegations Concerning "Credit" For Creation Of The Program Cannot Support A Claim Under Section 17200. ............. 15

   D.  Plaintiff Is Not Entitled To Any Relief Under Section 17200. .......... 16

IV.  PLAINTIFF'S CLAIM FOR BREACH OF CONTRACT AGAINST NBC AND UTN SHOULD BE DISMISSED. ......................................... 17

V.   PLAINTIFF'S INDUCEMENT CLAIM SHOULD BE DISMISSED. ........ 19

VI.  CONCLUSION .................................................................................. 20

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF AUTHORITIES

<u>Page</u>

C<span style="font-variant:small-caps">ASES</span>

Aagard v. Palomar Builders, Inc.,
    344 F. Supp. 2d 1211 (E.D. Cal. 2004) ............................................. 16

Almasi v. Equilon Enters., LLC,
    2012 U.S. Dist. Lexis 128623 (N.D. Cal. Sept. 10, 2012)................................ 13

Anderson v. Stallone,
    1989 U.S. Dist. Lexis 11109, 11 U.S.P.Q.2d (BNA) 1161 (C.D. Cal. Apr.
    25, 1989) ............................................. 15

Aqua Connect, Inc. v. Code Rebel, LLC,
    2011 U.S. Dist. Lexis 110092 (C.D. Cal. Sept. 26, 2011)................................ 20

Ashcroft v. Iqbal,
    556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)............................. 18, 19

Athena Feminine Techs. Inc. v. Wilkes,
    2011 U.S. Dist. Lexis 103209 (N.D. Cal. Sept. 13, 2011)................................ 19

Bank of the West v. Superior Court,
    2 Cal. 4th 1254, 10 Cal. Rptr. 2d 538 (1992) .................................... 16

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)................................. 18

Berkic v. Crichton,
    761 F.2d 1289 (9th Cir. 1985) .................................................... 3, 4, 8

Bethea v. Burnett,
    2005 U.S. Dist. Lexis 46944 (C.D. Cal. June 28, 2005)........................... 3, 4, 15

Boland, Inc. v. Rolf C. Hagen (USA) Corp.,
    685 F. Supp. 2d 1094 (E.D. Cal. 2010) ............................................. 12

Castorina v. Spike Cable Networks, Inc.,
    784 F. Supp. 2d 107 (E.D.N.Y. 2011) ................................................ 5

Cavalier v. Random House, Inc.,
    297 F.3d 815 (9th Cir. 2002) ..................................................... 2, 3

D<span style="font-variant:small-caps">AVIS</span> W<span style="font-variant:small-caps">RIGHT</span> T<span style="font-variant:small-caps">REMAINE</span> LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

CBS, Inc. v. Davis,
    510 U.S. 1315 (1994) ................................................................................ 17

CDN Inc. v, Kapes,
    197 F.3d 1256 (9th Cir. 1999) .................................................................. 2

Cel-Tech Comm'ns, Inc. v. L.A. Cellular Tel. Co.,
    20 Cal. 4th 163, 83 Cal. Rptr. 2d 548 (1999) ............................... 14, 16

Chase-Riboud v. Dreamworks, Inc.,
    987 F. Supp. 1222 (C.D. Cal. 1997) ....................................................... 2

Chaset v. Fleer/Skybox Int'l,
    300 F.3d 1083 (9th Cir. 2002) .............................................................. 20

Christianson v. West Pub.,
    149 F.2d 202 (9th Cir. 1945) ................................................................... 3

Cory Van Rijn, Inc. v. California Raisin Advis. Bd.,
    697 F. Supp. 1136 (E.D. Cal. 1987) ....................................................... 3

Craigslist, Inc. v. Naturemarket, Inc.,
    694 F. Supp. 2d 1039 (N.D. Cal. 2010) ............................................... 17

Dastar Corp. v. Twentieth Century Fox Film Corp.,
    539 U.S. 23 (2003) ........................................................................... 15, 16

Dean Witter Reynolds, Inc. v. Superior Court,
    211 Cal. App. 3d 758, 259 Cal. Rptr. 789 (1989) ............................... 16

Downing v. Abercrombie & Fitch,
    265 F.3d 994 (9th Cir. 2001) ................................................................ 14

Endemol Entertainment B.V. v. Twentieth Television Inc.,
    48 U.S.P.Q.2d 1524 (C.D. Cal. 1998) ................................................ 14

Entous v. Viacom Int'l,
    151 F. Supp. 2d 1150 (C.D. Cal. 2001) .............................................. 15

Ford v. Lehman Bros. Bank, FSB,
    2012 U.S. Dist. Lexis 85600 (N.D. Cal. June 20, 2012) .............. 12, 13

Frybarger v. Int'l Bus. Machs. Corp.,
    812 F.2d 525 (9th Cir. 1987) .................................................................. 3

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

_Funky Films, Inc. v. Time Warner Entertainment Co.,_
  462 F.3d 1072, 1081 (9th Cir. 2006) ................................................................ 8

_Hunt v. NBC,_
  872 F.2d 289 (9th Cir. 1988) ........................................................................... 17

_Hurvitz v. Hoefflin,_
  84 Cal. App. 4th 1232, 101 Cal. Rptr. 2d 558 (2000) ..................................... 17

_Idema v. Dreamworks, Inc.,_
  162 F. Supp. 2d 1129 (C.D. Cal. 2001) .................................................. 3, 8, 14

_Kasky v. Nike, Inc.,_
  27 Cal. 4th 939, 119 Cal. Rptr. 2d 296 (2002) ............................................... 13

_Kim v. Sumitomo Bank,_
  17 Cal. App. 4th 974, 21 Cal. Rptr. 2d 834 (1993)......................................... 18

_Klekas v. Emi Films,_
  150 Cal. App. 3d 1102, 198 Cal. Rptr. 296 (1984)............................................ 1

_Kodadek v. MTV Networks, Inc.,_
  152 F.3d 1209 (9th Cir. 1998) ......................................................................... 15

_Kouf v. Walt Disney Pictures & Television,_
  16 F.3d 1042 (9th Cir. 1994) ............................................................................. 8

_Latimore v. NBC,_
  480 F. App'x 649 (2d Cir. 2012) ....................................................................... 5

_Linear Tech. Corp. v. Applied Materials, Inc.,_
  152 Cal. App. 4th 115, 61 Cal. Rptr. 3d 221 (2007) ....................................... 13

_Mattel v. Goldberger Doll Mfg. Co.,_
  365 F.3d 133 (2d Cir. 2004).............................................................................. 6

_Milano v. NBC Universal, Inc._
  584 F. Supp. 2d 1288 (C.D. Cal. 2008) ......................................................... 4, 5

_Nelson v. PRN Prods.,_
  873 F.2d 1141 (8th Cir. 1989) ........................................................................... 3

_Olson v. NBC,_
  855 F.2d 1446 (9th Cir. 1988) ........................................................................... 5

iv

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Oracle Am. v. Serv. Key,
     2012 U.S. Dist. Lexis 171406 (N.D. Cal. 2012)................................................. 19

Pacific Gas & Electric Co. v. Bear Stearns & Co.,
     50 Cal. 3d 1118, 270 Cal. Rptr. 1 (1990)......................................................... 20

Quelimane Co. v. Stewart Title Guaranty Co.,
     19 Cal. 4th 26, 77 Cal. Rptr. 2d 709 (1998) ..................................................... 19

RDF Media Ltd. v. Fox Broad. Co.,
     372 F. Supp. 2d 556 (C.D. Cal. 2005) .............................................................. 15

Satava v. Lowry,
     323 F.3d 805 (9th Cir. 2003) ............................................................................... 4

Saunders v. Superior Court,
     27 Cal. App. 4th 832, 33 Cal. Rptr. 2d 438 (1994)........................................... 13

See v. Durang,
     711 F.2d 141 (9th Cir. 1983) ............................................................................... 4

Shaw v. Lindheim,
     919 F.2d 1353 (9th Cir. 1990) ............................................................................. 3

Three Boys Music Corp. v. Bolton,
     212 F.3d 477 (9th Cir. 2000) ............................................................................... 2

Turtle v. Castle Records Inc.,
     2004 U.S. Dist. Lexis 29124 (N.D. Cal. June 1, 2004) .................................... 16

Unique Functional Prods. v. JCA Corp.,
     2012 U.S. Dist. Lexis 13457 (S.D. Cal. Feb. 3, 2012) ..................................... 13

United States CFTC v. Paron Capital Mgmt., LLC,
     2012 U.S. Dist. Lexis 49154 (N.D. Cal. April 6, 2012) ............................. 18, 19

Van't Rood v. County of Santa Clara,
     113 Cal. App. 4th 549, 6 Cal. Rptr. 3d 746 (2003) .......................................... 18

Walker v. Time Life Films, Inc.,
     784 F.2d 44 (2d Cir. 1986)................................................................................... 5

Wild v. NBC Universal, Inc.,
     788 F. Supp. 2d 1083 (C.D. Cal. 2011), aff'd, 2013 U.S. App. Lexis 4169
     (9th Cir. Feb. 28, 2013)................................................................................... 4, 8

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Williams v. Crichton,
    84 F.3d 581 (2d Cir. 1996)................................................................. 3, 5

Williams v. UMG Recordings,
    281 F. Supp. 2d 1177 (C.D. Cal. 2003) .......................................... 16

Zella v. The E.W. Scripps Co.,
    529 F. Supp. 2d 1124 (C.D. Cal. 2007) .................................... 3, 5, 8

**STATUTES**

17 U.S.C.
    § 102........................................................................................ 14
    § 103........................................................................................ 14
    § 106........................................................................................ 15
    § 301(a)................................................................................... 14
    § 505........................................................................................ 20

California Business & Professions Code
    § 17200 ........................................................................... passim
    § 17203 .................................................................................. 17

California Civil Code
    § 2316...................................................................................... 18
    § 2317...................................................................................... 18

**TREATISES**

4-13 Nimmer on Copyright § 13.02 (2012 ) ............................................ 2

**CONSTITUTIONAL PROVISIONS**

United States Constitution, First Amendment ....................................... 17

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.        SUMMARY OF ARGUMENT

This lawsuit epitomizes "that obsessive conviction, so frequent among authors and composers, that all similarities between their works and any others which appear later must inevitably be ascribed to plagiarism."[6]  Plaintiff has sued eight individuals and entities associated with NBCU's television program "Stars Earn Stripes" (the "Program"), based on his belief that it was copied from his two-page treatment for a program idea called "Celebrity SEALS."  FAC ¶¶ 2-4; Ex. A.  Although Plaintiff never had <u>any</u> contact with the Program's creators, television producers Mark Burnett and Dick Wolf,[7] he claims that the Program must have been stolen because he shared his idea with defendant David Hurwitz, a freelance producer who worked on NBC's "Fear Factor" and later worked on "Stars Earn Stripes."  FAC ¶¶ 24-41.

Plaintiff's theory suffers from a fatal flaw, however:  his idea for a program in which celebrities compete in simulated military-style exercises consists almost <u>entirely</u> of elements that were found in a wide variety of other television programs long before Plaintiff claims he conceived of his "idea" – including programs created and produced <u>by defendant Mark Burnett</u>.  Without these pre-existing elements, generic ideas, and so-called "scenes a faire" – which the Court may not consider in evaluating his copyright claim – Plaintiff cannot demonstrate the requisite "substantial similarity" of protectable expression between his treatment and the Program.  Consequently, his copyright claim must be dismissed.[8]  Section II, <u>infra</u>.

---

[6] <u>Klekas v. Emi Films</u>, 150 Cal. App. 3d 1102, 1114, 198 Cal. Rptr. 296 (1984).

[7] Plaintiff does not claim to have had any contact with any of the named defendants other than Mr. Hurwitz; nor does he allege any <u>facts</u> suggesting that the Wolf/Burnett Defendants ever had access to his Treatment or ideas.  <u>See</u> Section II. His only allegation concerning either NBCU or UTN is an assertion that Hurwitz spoke to an unidentified "exec" on another NBCU program.  FAC ¶ 72.

[8]  On a motion to dismiss, this Court can review the respective works at issue to determine if there is substantial similarity of protectible expression.  <u>See</u> Section II.A, infra.  The Court also may take judicial notice of the content of other published works.  <u>See</u> Section II; <u>see also</u> RJN at 3-12.

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Plaintiff's state law claims also are inherently flawed.  His claim for "unfair competition" fails because the predicate acts on which it relies – breach of contract, alleged "copying" of his Treatment, and failure to give him "credit" – cannot create tort liability under Section 17200.  <u>See</u> Section III.[9]  Plaintiff's contract claim against NBCU and UTN also fails, because he has not alleged any facts to support a claim that Mr. Hurwitz had authority to bind these companies to a contract.  <u>See</u> Section IV.  Finally, Plaintiff's inducement claim against NBCU and UTN fails, because it is based solely on conclusory assertions, and contradicts his contract claim against the same defendants.  <u>See</u> Section V.  Accordingly, these claims must be dismissed.

## II.   PLAINTIFF'S COPYRIGHT CLAIM FAILS.

Plaintiff's copyright infringement claim requires him to prove "(1) ownership of a valid copyright and (2) copying by the defendant of protectable elements of the work."  <u>CDN Inc. v, Kapes</u>, 197 F.3d 1256, 1258 (9th Cir. 1999); <u>Cavalier v. Random House, Inc.</u>, 297 F.3d 815, 822 (9th Cir. 2002).  To establish "copying," Plaintiff must prove that Defendants had access to his Treatment, <u>and</u> that their Program is "substantially similar" to protectable elements of the Treatment.  <u>Chase-Riboud v. Dreamworks, Inc.</u>, 987 F. Supp. 1222, 1225 (C.D. Cal. 1997).  Because Plaintiff cannot meet this burden, his copyright claim must be dismissed.[10]

### A.   Dismissal Is Required Where Works Are Not Substantially Similar.

It is well established that a court can compare the two works that form the

---

[9] Moreover, Plaintiff does not have any right to restitution, or injunctive relief – the only remedies provided under Section 17200.  Section III.D, <u>infra</u>.

[10] Plaintiff does not allege <u>any</u> facts supporting a claim that the Wolf/Burnett defendants had access to his Treatment, as required to state a copyright claim.  <u>Three Boys Music Corp. v. Bolton</u>, 212 F.3d 477, 482 (9th Cir. 2000).  As to NBCU and UTN, the only "fact" alleged is that Hurwitz said he "bounced [the idea] off the [unnamed] exec" working on another NBC program  FAC ¶ 37.  There is no allegation that Hurwitz shared the <u>Treatment</u> with anyone at NBCU, nor that <u>any</u> information or material was shared with UTN.  Access may not be inferred through "mere speculation or conjecture."  <u>Id.</u>; 4-13 Nimmer on Copyright § 13.02 (2012) (same).  Because Plaintiff simply <u>assumes</u> that Hurwitz shared the Treatment with other defendants, his copyright claim against them fails for this additional reason.  <u>Id.</u>

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

basis of a copyright claim, and should dismiss claims as a matter of law where no reasonable fact finder could find substantial similarity between the protectible elements of the works.[11]  Thus, this Court can compare the two works referenced in the FAC – Plaintiff's Treatment (FAC, Ex. A) and Defendants' Program (RJN, Ex. 10) – to determine whether there is substantial similarity.[12]  In doing so, the Court "must take care to inquire only whether the <u>protectible elements</u>, <u>standing alone</u>, are substantially similar. … Therefore, a court must filter out and disregard the non-protectible elements in making its substantial similarity determination." <u>Cavalier</u>, 297 F.3d at 822 (<u>quoting</u>, <u>inter alia</u>, <u>Williams v. Crichton</u>, 84 F.3d 581, 588 (2d Cir. 1996) (original emphasis).[13]  This includes filtering out <u>ideas</u>, which are not protected by copyright law.  <u>Cavalier</u>, 297 F.3d at 823 ("[c]opyright law only protects expression of ideas, not the ideas themselves.")  <u>See</u> <u>also</u> <u>Berkic</u>, 761 F.2d at 1293 ("[n]o one can own the basic idea for a story"; "[g]eneral plot ideas are not protected by copyright law"); <u>Shaw v. Lindheim</u>, 919 F.2d 1353, 1356 (9th Cir.

---

[11]  <u>See</u>, <u>e.g.</u>, <u>Christianson v. West Pub.</u>, 149 F.2d 202, 203 (9th Cir. 1945) ("[t]here is ample authority for holding that when the copyrighted work and the alleged infringement are both before the court, ... non-infringement can be determined on a motion to dismiss."); <u>Zella v. The E.W. Scripps Co.</u>, 529 F. Supp. 2d 1124, 1130 (C.D. Cal. 2007) ("[f]or fifty years, courts have followed this rather obvious principle and dismissed copyright claims that fail from the face of the complaint.") (collecting cases); <u>Nelson v. PRN Prods.</u>, 873 F.2d 1141, 1143-44 (8th Cir. 1989) (same; affirming order granting motion to dismiss); <u>Cory Van Rijn, Inc. v. California Raisin Advis. Bd.</u>, 697 F. Supp. 1136, 137 (E.D. Cal. 1987) (granting motion to dismiss).  <u>See also</u> <u>Frybarger v. Int'l Bus. Machs. Corp.</u>, 812 F.2d 525, 528 (9th Cir. 1987) (reaffirming propriety of granting summary judgment on substantial similarity); <u>Berkic v. Crichton</u>, 761 F.2d 1289, 1292 (9th Cir. 1985) (same).

[12]  This Court properly can consider materials referenced in the FAC.  <u>See</u>, <u>e.g.</u>, <u>Zella</u>, 529 F. Supp. 2d at 1128 (court can consider documents that "are not physically attached to the complaint but whose contents are alleged in the complaint and whose authenticity no party questions.").  DVDs containing all six episodes of "Stars Earn Stripes" are attached as Exhibit 10 to the concurrently-filed Notice Of Lodging.  <u>See also</u> RJN at 2-3; Thompson Decl. at ¶¶ 3-4, Ex. 10.

[13]  <u>See also</u> <u>Bethea v. Burnett</u>, 2005 U.S. Dist. Lexis 46944, at *21 (C.D. Cal. June 28, 2005) ("'[s]ubstantial similarity' refers to similarity of expression, not merely similarity of ideas or concepts."); <u>Idema v. Dreamworks, Inc.</u>, 162 F. Supp. 2d 1129, 1176 (C.D. Cal. 2001) ("[t]he party claiming infringement may place no reliance upon any similarity in expression resulting from unprotectable elements.")

3
<u>DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT</u>

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1990) ("facts and ideas within a [copyrighted] work are not protected.").

Similarly, copyright law does not protect "situations and incidents which flow naturally from a basic plot premise, so-called scenes a faire…." Berkic, 761 F.2d at 1293; see also See v. Durang, 711 F.2d 141, 143 (9th Cir. 1983) (stock scenes or scenes that flow necessarily from ideas that are common to the works at issue are not protectible); Satava v. Lowry, 323 F.3d 805, 810 (9th Cir. 2003) (same); Wild v. NBC Universal, Inc., 788 F. Supp. 2d 1083, 1099 (C.D. Cal. 2011) (scenes a faire are "scenes that necessarily result from the choice of a setting or situation") (citation omitted), aff'd, 2013 U.S. App. Lexis 4169 (9th Cir. Feb. 28, 2013).

In the context of reality television programs like the Program at issue, proving "substantial similarity" is even more difficult, since most of the elements plaintiffs claim were "copied" are precisely the kind of bare "ideas" and "scenes a faire" that courts consistently have found to be unprotected. For example, in Bethea, the plaintiff claimed that the television program "The Apprentice" infringed the copyright in his treatment for a reality show called "C.E.O.," in which contestants would live together and compete in business challenges with the winner named the CEO of a start-up corporation. 2005 U.S. Dist. Lexis 46944, at *24-25. Despite the common elements, the court held that the "alleged similarity is nothing more than a string of generic 'ideas' which is not protected by copyright law." Id. at 32.[14] See also id. at 37, 42 (use of boardroom and contestants living together in specially constructed living spaces were generic, unprotected ideas).

Similarly, in Milano v. NBC Universal, Inc. 584 F. Supp. 2d 1288 (C.D. Cal. 2008), the district court rejected the plaintiff's claim that the reality program "The

---

[14] The plaintiff's treatment even suggested Donald Trump as a possible host for his program, a striking similarity that the court dismissed. Id. at 40 ("[a]s an initial matter, Plaintiffs cannot copyright the idea of having a well-known business leader, or even more specifically Donald Trump, host a reality television program."). This is especially relevant here, given Plaintiff's claim that Defendants "misappropriated" his idea of using a host with a military background for a military-themed show. FAC at 41. See also Section II.C, infra (pointing out differences in "hosts").

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Biggest Loser" infringed on her copyrighted treatment for a program called "From Fat to Phat," even though both shows featured contestants who lived together and tried to lose weight.  Id. at 1291-92, 1295.  The court found that the similarities consisted of "very commonplace ideas," including the fact that  "[a]s a weight loss competition, the program would involve exercise and fitness activities," "would focus on the struggles" of the "grossly overweight and seriously out of shape" contestants, would include "discussions of diet and healthy eating and … include diet tips," would utilize "[e]xercise and dietary experts," and would "use such common ideas as weigh-ins, before and after photographs, and some group challenges that would require the contestants to work as a team."  Id. at 1295.[15]

Finally, Plaintiff cannot rely on elements for a television program that were used in other programs that predate the Treatment – particularly programs created and produced by Defendant Burnett before Plaintiff ever conceived of "his" program idea.[16]  It is ironic, to say the least, that Plaintiff has the temerity to sue for copyright infringement when it is clear that his Treatment is derivative of television programs

_____

[15] See also Latimore v. NBC, 480 F. App'x 649, 651 (2d Cir. 2012) (rejecting plaintiff's claim that "The Biggest Loser" infringed on copyrighted treatment for a show called "Phat Farm" even though both works "take advantage of staples of reality television such as team-based competition, elimination, and communal living"); Zella, 529 F. Supp. 2d at 1126, 1135 (rejecting copyright claim based on treatment for an "interview/cooking show featuring celebrities cooking their favorite dishes in their own kitchens"; similarities were scenes a faire "that naturally flow from the interview and talk-show format").  Cases involving scripted programs are in accord.  Olson v. NBC, 855 F.2d 1446, 1451 (9th Cir. 1988) (similarities between the plaintiff's treatment and screenplay and "the A-Team" were "common to the genre of action-adventure television series and movies"); Castorina v. Spike Cable Networks, Inc., 784 F. Supp. 2d 107, 111-112 (E.D.N.Y. 2011) (court granted motion to dismiss, finding that plaintiff's treatment "consists largely of stock concepts and 'scenes a faire,' such as fielding a baseball hit by a professional baseball player, and images depicting 'panic, tension, relief, or failure.'"); Williams, 84 F.3d at 588 ("nearly all of the similarities" between plaintiff's books and the movie Jurassic Park "arise from noncopyrightable elements"); Walker v. Time Life Films, Inc., 784 F.2d 44, 49-50 (2d Cir. 1986) (similarities between movie and book about the NYPD were unprotectable scenes a faire, including depictions of "cockfights, drunks, stripped cars, prostitutes, and rats"; central characters as "third- or fourth-generation Irish policemen who live in Queens and frequently drink"; and the like).

[16] "Substantial similarity" is relevant because it can give rise to an inference that the defendant copied the plaintiff's work.  Where, however, the supposedly similar

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

created by one of the very same individuals he is suing.

**B.     The Purported Similarities Between Plaintiff's Treatment And The Program Cannot Support His Copyright Claim.**

Plaintiff's primary complaint is his belief that Defendants "stole" his idea for a television program in which celebrities compete in a series of military-style exercises.  FAC ¶¶ 2-4.  But an "idea" is not protectible under copyright law; nor can his claim derive from elements that naturally flow from combining the well-trod ground of celebrity competition programs[17] with a military-training scenario.

For example, the "celebrity competition" elements Plaintiff asserts were copied from his Treatment flow naturally from a program in which celebrities compete – including celebrities; the elimination of competitors; having prizes go to charity; depicting "behind-the-scenes drama"; and having competitors judged by "a panel of experts."  FAC, Ex. A.[18]  For example, in "Celebrity Apprentice," a Mark Burnett program that first aired in January 2008, celebrities compete against each other in "business-driven tasks around New York City."  See RJN at 10;  Cullinan Decl. at ¶ 18, Ex. 28.  The contestants are "subjected to long hours, grueling deadlines, intellectual challenges, personality clashes and intense scrutiny under the careful watch of Donald Trump and his advisors."  Id.  Each competition ended with

---

elements are found in defendant's own works before plaintiff's work was created – or in other publicly-available works – the inference of copying no longer makes sense. See, e.g., Mattel v. Goldberger Doll Mfg. Co., 365 F.3d 133, 135 n.2 (2d Cir. 2004).

[17] The Court can take judicial notice of the fact that reality television programs in which celebrities compete against each other are ubiquitous.  See RJN at 5-12.

[18] Notably, Defendants' Program did not eliminate competitors by using a panel of experts.  See Section II.C, infra.  But this element has been used in many reality shows that predate Plaintiff's concept, including Dancing with the Stars, Skating with the Stars, Celebrity Duets, Celebrity Circus, Celebrity Cooking Showdown, and Celebrity Rap Superstar, among others.  See RJN at 7-9; Cullinan Decl. at ¶¶ 2, 6, 8, 10, 12, 13, Exs. 12, 16, 18, 20, 22, 23.

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

the celebrities being "judged by Trump and his advisors." Id.  The winner received $250,000 for a charity.  Id.[19]

Similarly, Plaintiff complains about elements in the Program that would naturally flow from a program in which civilians participate in military-training exercises.  For example, in "Combat Missions" – a television program produced by defendant Burnett that aired in 2002 – four teams of military and police operatives, including a dozen Navy SEALS, competed in physical challenges and "mission" scenarios.  See RJN at 4; Harrell Decl. at ¶ 8, Ex. 2.[20]  The show was hosted by former Navy SEAL Rudy Boesch, who was on "Survivor" (and who was named as a possible host in Plaintiff's later-created Treatment).  Id.; FAC, Ex. A.  Contestants typically were eliminated by a vote of other participants – something that Plaintiff appropriated for his Treatment, but which was not used in "Stars Earn Stripes."  Id.[21]

Other television programs with military elements that predated Plaintiff's Treatment include "Celebrity Boot Camp" and "Celebrity Fit Club: Boot Camp," both of which featured celebrities coping with military boot camp-like experiences, including having "tough" coaches who worked with the celebrities and ordered them to "behave in a regimented manner."  See FAC, Ex. A; compare RJN at 10-11; Cullinan Decl. at ¶¶ 19, 23, Exs. 29, 32.[22]

---

[19] Other reality shows in which celebrities compete for charity include Celebrity Family Feud, Who Wants To Be A Millionaire? Celebrity Edition, and Jeopardy! Celebrity Edition.  See RJN at 8-9; Cullinan Decl. at ¶¶ 9, 14, 15, Exs. 19, 24, 25.

[20] Not surprisingly, given the nature of the program, the content included "use of heavy weapons" and "techniques of a sniper," among other common military scenarios.  See FAC ¶ 41; RJN at 4; Harrell Decl. at ¶ 8, Ex. 2.  Moreover, in "Combat Missions" the participants lived together on set and often behaved in a regimented manner befitting a military unit – both of which were features of Plaintiff's Treatment but not part of "Stars Earn Stripes."  See RJN at 4; Harrell Decl. at ¶ 8, Ex. 2; FAC Ex. A.

[21] Of course, the idea to have participants "vote" to eliminate rivals did not originate with Plaintiff; that was a key element of the long-running "Survivor" program, which Mark Burnett has worked on since it premiered in the U.S. in **2000**.

[22] Other reality shows featuring celebrities participating in military-style training include "Commando VIP," a British program that aired in 2005, featuring celebrities

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

In short, the elements of Plaintiff's Treatment that he claims were copied in the Program are generic ideas, scenes a faire, and/or elements that were present in other prior works – including works produced by defendants – which cannot support his claim of substantial similarity.  See Wild, 788 F. Supp. 2d at 1099 ("[c]ase law illustrating the concept of 'scenes a faire' reveals that two stories can bear remarkable similarity … without a finding that one has violated the copyright of the other.").  Plaintiff's reuse of elements from other reality shows merely confirms the Ninth Circuit's observation "that in Hollywood, as in the life of men generally, there is only rarely anything new under the sun."  Berkic, 761 F.2d at 1294.

## C.    The Works Are Dissimilar As To Protected Expression.

Comparing two works for substantial similarity in the Ninth Circuit requires application of the "extrinsic test," which is "an objective test based on specific expressive elements:  the test focuses on articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events in two works."  Kouf v. Walt Disney Pictures & Television, 16 F.3d 1042, 1045 (9th Cir. 1994); (quotation marks omitted); see also Zella, 529 F. Supp. 2d. at 1133 ("[t]o assess substantial similarity as a matter of law, the Court must apply the objective 'extrinsic test.'").  It does not permit consideration of the "idea," or other non-protectible elements discussed above;[23] once those elements are carved out, the court

---

trained by special forces to compete in combat missions, while living together in a camp; and "Armed & Famous," which aired on CBS and VH1 in 2007, depicting celebrities training to be reserve police officers.  See RJN at 5, 10; Cullinan Decl. at ¶¶ 20, 16-17, Exs. 11, 26-27.

[23] Idema, 162 F. Supp. 2d at 1179 ("'substantial similarity'… must be measured at the level of the concrete 'elements' of each work, rather than at the level of the basic 'idea,' or 'story,' that it conveys.")  Thus, in Kouf, the Ninth Circuit found no substantial similarity between two works featuring a method of shrinking humans in size, and depicting "a life struggle of kids fighting insurmountable dangers."  16 F.3d at 1045.  In Berkic, the court found no substantial similarity between two works that "deal with criminal organizations that murder healthy young people, then remove and sell their vital organs to wealthy people in need of organ transplants," both of which "take their general story from the adventures of a young professional who courageously investigates, and finally exposes, the criminal organization."  761 F.2d at 1293.  See also Funky Films, Inc. v. Time Warner Entertainment Co., 462 F.3d

---

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

compares what is left to see if there are substantial similarities.  Here, after removing the unprotected "idea," generic and previously-used elements, and scenes a faire, it is clear that the two works are not substantially similar.

Theme and Mood:  Plaintiff's Treatment is all about the Navy SEALs, whom he calls the "toughest of the tough."  It would have celebrities compete in a "grueling and intense series of competitive events that have been carefully designed to mimic the training that actually takes place during Navy SEAL School," including "surf torture," "drown proofing," and "Hell Week" – "[f]ive, twenty-hour days in which people run more than 200 miles and sleep a total of just four hours."  FAC, Ex. A.  Celebrities would "live together in standard military barracks," and be forced to behave "in a regimented manner as well as do menial tasks, all under the supervision of their tough coaches."  Id.  The concept also included having the celebrities' personal lives "revealed," and focusing on "behind-the-scenes drama" as celebrities tried to cope with the harsh conditions.  In short, Plaintiff's idea was to degrade and humiliate celebrities in a boot camp-like setting, with the expectation that "many of our celebrities [will] drop out prior to completion of the program."  Id.

In contrast, "Stars Earn Stripes" is an unabashedly positive tribute to military personnel, law enforcement, and first responders.  The message reiterated throughout the Program is to highlight the attributes of those who protect and serve.  Celebrities are paired with military or law enforcement partners, who train and compete with the celebrities, encouraging them rather than ordering them around or humiliating them.  There is a spirit of camaraderie, even between competing teams.  As a whole, the Program is about celebrating these heroes, and showing the audience "what it takes" to serve.  See RJN at 2-3; Thompson Decl. at ¶¶ 3-4, Ex. 10.

Plot and Sequence of Events:  Plaintiff's Treatment contemplates that the celebrities would live together in barracks, where they would be depicted in daily

_____

1072, 1081 (9th Cir. 2006) (no substantial similarity even though "both works share certain plot similarities")

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

living that would include doing "menial" tasks.  Defendants' Program does not have the celebrities living together, nor does it depict their daily activities.

Plaintiff's Treatment has celebrities compete in training exercises that mimic Navy SEAL school.  After the celebrities compete, two contestants are chosen for elimination by a panel of experts, including the show's host, who will judge the contestants on "physical performance, task accomplishments, skill-set growth, promise, effort, character and attitude."  The remaining celebrities then vote on which of the two will be eliminated.  The ultimate winner receives a $100,000 donation to any charity of his or her choice (not limited to military charities).[24]

In contrast, Defendants' Program depicts celebrities being trained to compete with their partners in time-trial "missions" that do not mirror a specific branch of the armed forces.  The two teams that take the longest to complete the mission are marked for possible elimination.  The celebrities on those teams then compete head-to-head in an event, and the loser is eliminated.  There is no panel of experts; the hosts do not participate in the elimination process; and the other celebrities do not vote on who would be eliminated.  Each week that a celebrity survives the competition, he or she earns a "stripe," which translates into $10,000 for a military-themed charity that each selected.  In addition, the final winner of the competition receives an additional $100,000 for his or her military-themed charity.

Dialogue:  There is no allegation that Defendants' unscripted Program contained any "dialogue" that is similar to anything in Plaintiff's Treatment.

Setting:  In Plaintiff's treatment, the celebrities live together in military barracks and must "behave in a regimented manner as well as do menial tasks."  It contemplates that the celebrities' personal lives will be revealed and "behind-the-

---

[24] As indicated above, most of these elements – a competition, some means of eliminating competitors (including through a panel of judges or by votes of other competitors) are elements that have been used in many prior programs; but notably, Plaintiff's methodology is <u>not</u> the same as in the Defendants' Program.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

scenes drama" will be shown.  In "Stars Earn Stripes," the celebrities do not live together (in barracks or otherwise).  They are not asked to behave in a regimented manner.  The Program does not feature behind-the-scenes drama, or focus on revealing "private" information about the celebrities.

Characters:  In addition to the different celebrity contestants,[25] there are two types of "characters":  the service members and the host.  Plaintiff's Treatment has a former Navy SEAL acting as a personal coach for each celebrity.  These are to be "tough coaches" who will supervise the celebrities as they are "asked to behave in a regimented manner as well as do menial tasks."  FAC, Ex. A.

In contrast, each of the military and law enforcement operatives in "Stars Earn Stripes" is paired with a celebrity to form a two-person team.  The operative helps to train his or her celebrity teammate in various skills that will be utilized on the missions, which they complete together.  The operatives and celebrities work cooperatively; the operatives are not "tough" in their treatment of the celebrities, do not order the celebrities around, and do not supervise the celebrities doing menial tasks.   See RJN at 2-3; Thompson Decl. at ¶¶ 3-4, Ex. 10

For a host, Plaintiff's treatment suggests a "retired seal" with the "'it' factor,"[26] and identifies four potential hosts, all former Navy SEALs.  FAC, Ex. A.  Defendants' Program had two hosts, neither of whom is a former Navy SEAL, and neither of whom fit the "tough" profile Plaintiff's treatment describes.[27]  One host was Samantha Harris, who was the co-host of eight seasons of "Dancing with the Stars" – another reality show featuring celebrities – and a correspondent for Entertainment Tonight.  The second host was General Wesley Clark, a retired four-

---

[25] None of the celebrities in the Program are mentioned in the Treatment.

[26] Remarkably, Plaintiff even claims that Defendants "misappropriated" his purported idea of using a host who has "the 'it' factor."  FAC ¶ 41.

[27] For example, one of Plaintiff's host suggestions is Richard Marcinko, who is described as an "[a]ss-kicking Navy SEAL … Marcinko is one of the toughest men to ever serve our country. … Demo Dick is raw."  FAC, Ex. A.

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1  star general of the U.S. Army who was valedictorian at West Point, earned his
2  master's degree in military science, and was a Rhodes Scholar. [28]

3       In short, Plaintiff's two-page treatment consists of concepts that have been
4  used many times before, including by Defendants.  Even so, the extrinsic elements
5  of his proposed program are not substantially similar to "Stars Earn Stripes."
6  Because Plaintiff cannot show that the two works have substantial similarity of
7  protectable expression, his copyright claim fails as a matter of law.

8  **III.  PLAINTIFF'S CLAIM FOR UNFAIR COMPETITION SHOULD BE**
9  **DISMISSED WITH PREJUDICE.**

10      Plaintiff's attempt to convert his copyright and contract claims into a tort
11 claim, by invoking California's unfair business practices statute (Bus. & Prof. Code
12 § 17200), should be rejected.  None of the predicate acts he identifies gives rise to a
13 claim under Section 17200, and he cannot rely on conclusory allegations that
14 Defendants were "unfair."  Moreover, he is not entitled to any available relief under
15 Section 17200.  Thus, his Section 17200 claim should be dismissed with prejudice.

16      **A.   Plaintiff's Unfair Competition Claim Cannot Be Based On The**
17      **Alleged Breach Of A Purported Implied Contract.**

18      Section 17200 prohibits conduct that is "unlawful, unfair or fraudulent."  Id.
19 It does not provide a mechanism for every contract claim to give rise to tort liability.
20 See, e.g., Boland, Inc. v. Rolf C. Hagen (USA) Corp., 685 F. Supp. 2d 1094, 1110
21 (E.D. Cal. 2010) ("breach of contract … is not itself an unlawful act for purposes of
22 the UCL."); see also Ford v. Lehman Bros. Bank, FSB, 2012 U.S. Dist. Lexis 85600,
23 at *29 (N.D. Cal. June 20, 2012) (courts "consistently conclude that a breach of
24 contract is not itself an unlawful act for the purposes of the UCL").  As one court
25 warned, "[w]ere the court to rule that a simple breach of contract could form the

26
27 _____
   [28] See RJN at 10; Cullinan Decl. at ¶ 21-22, Ex. 30-31 (Wikipedia, Samantha
28 Harris, http://en.wikipedia.org/wiki/Samantha_Harris; Wesley Clark,
   http://en.wikipedia.org/wiki/Wesley_Clark (last accessed March 2, 2013).)

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

basis for a § 17200 claim, then virtually <u>every</u> contract action could be converted into a business tort." <u>Unique Functional Prods. v. JCA Corp.</u>, 2012 U.S. Dist. Lexis 13457, at *15 (S.D. Cal. Feb. 3, 2012) (emphasis added). Instead, to state a claim under Section 17200, Plaintiff must allege conduct that goes <u>beyond</u> a mere breach, and is independently "unlawful"[29] or an "unfair" business practice. <u>Ford</u>, 2012 U.S. Dist. Lexis 85600, at *29 (emphasis added). He has done neither. The FAC asserts simply that Defendants breached an implied oral contract, and/or induced a breach – conduct that is not independently "forbidden by law."[30]

Similarly, Plaintiff's rote allegations do not meet his burden of demonstrating conduct that is "unfair" within the meaning of the statute. <u>See</u> <u>Unique Functional Prods.</u>, 2012 U.S. Dist. Lexis 13457, at *16 (UCL claim fails where plaintiff "has not pled or provided any substantial argument concerning why [his] breach constitutes an unfair practice on top of the alleged breach."). Even assuming, for sake of argument, that Plaintiff could be considered a "competitor" within the meaning of the statute,[31] he must plead and prove "conduct that threatens an

---

[29] "Unlawful" business practices are those "forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." <u>Saunders v. Superior Court</u>, 27 Cal. App. 4th 832, 838-39, 33 Cal. Rptr. 2d 438 (1994).

[30] Notably, Plaintiff does not even <u>allege</u> a breach of contract or inducement claim against five of the defendants. <u>See</u> FAC ¶¶ 70-82. Consequently, the ambiguous allegation in the 17200 claim relating to breach or induced breach of a contract cannot provide a basis for a claim against these defendants

[31] To state a claim at all, Plaintiff must be either a consumer or a competitor whose rights are protected by the statute. <u>See</u> <u>Kasky v. Nike, Inc.</u>, 27 Cal. 4th 939, 949, 119 Cal. Rptr. 2d 296 (2002) (Section 17200's purpose "is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services."). <u>See also</u> <u>Linear Tech. Corp. v. Applied Materials, Inc.</u>, 152 Cal. App. 4th 115, 135, 61 Cal. Rptr. 3d 221 (2007) (affirming dismissal of 17200 claim where "the alleged victims are neither competitors nor powerless, unwary consumers"); <u>Almasi v. Equilon Enters., LLC</u>, 2012 U.S. Dist. Lexis 128623, at * 27 (N.D. Cal. Sept. 10, 2012) ("Plaintiffs have failed to provide any support for their argument that they are able to bring a UCL claim for unfair practices despite not being consumers and not being competitors."). He clearly is not a "consumer," since he did not acquire goods or services from Defendants. <u>See</u> "consumer." <u>Collins English Dictionary – Complete & Unabridged 10th Edition</u> (HarperCollins Publishers), available at http://dictionary.reference.com/browse/consumer. He also

---

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." <u>Cel-Tech Comm'ns, Inc. v. L.A. Cellular Tel. Co.</u>, 20 Cal. 4th 163, 187, 83 Cal. Rptr. 2d 548 (1999).  Moreover, "any finding of unfairness to competitors under section 17200 [must] be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." <u>Id.</u> at 186-187.  Plaintiff does not allege that the purported breach of an implied contract by some of the Defendants is akin to an antitrust violation, or "otherwise significantly threatens or harms competition." <u>Id.</u>  His garden-variety contract claim is simply that, and cannot be shoehorned under Section 17200.

### B.   Plaintiff's Allegations Of Converting And Copying Cannot Give Rise To A Claim Under Section 17200.

Plaintiff's unfair competition claim also includes ambiguous allegations that Defendants committed "acts of conversion," and that the Program was a "direct copy" of the Treatment.  <u>See</u> FAC ¶¶ 64, 66.  But to the extent Plaintiff tries to base a claim under Section 17200 on the alleged "copying" of his Treatment, it is preempted by federal copyright law.  <u>See</u> 17 U.S.C. § 301(a).

To determine whether a state-law claim is preempted by the Copyright Act, the Ninth Circuit employs a two-part test.  First, the work involved must "fall within the subject matter of copyright" as set forth in 17 U.S.C. §§ 102 and 103.  <u>Downing v. Abercrombie & Fitch</u>, 265 F.3d 994, 1003 (9th Cir. 2001).  Second, the rights that the plaintiff asserts under state law must be "rights that are equivalent" to those protected by the Copyright Act.  <u>Id.</u>  <u>Downing</u>, 265 F.3d at 1003.[32]

_____

does not allege facts to support a claim that he is a "competitor"; to the contrary, he purportedly was trying to sell his concept <u>to</u> the Defendants.  FAC ¶¶ 28, 33.

[32] To avoid preemption, Plaintiff's state-law claims must be "qualitatively different" from his copyright claim.  <u>Idema</u>, 162 F. Supp. 2d at 1190.  Moreover, "the scope of preemption is broader than the scope of protection," <u>Id.</u> at 1189 (quoting <u>Endemol Entertainment B.V. v. Twentieth Television Inc.</u>, 48 U.S.P.Q.2d 1524, 1526 (C.D. Cal. 1998)).  Thus, even though Plaintiff cannot state a valid copyright claim (<u>see</u> Section II, <u>supra</u>), that does not impact preemption.

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

The first part of the preemption test is easily satisfied; Plaintiff alleges that the Treatment is a fixed writing that falls within the scope of copyright law.  FAC ¶¶ 20, 46-48; Entous v. Viacom Int'l, 151 F. Supp. 2d 1150, 1159 (C.D. Cal. 2001); Anderson v. Stallone, 1989 U.S. Dist. Lexis 11109, at *12, 11 U.S.P.Q.2d (BNA) 1161  (C.D. Cal. Apr. 25, 1989) (script is within the subject matter of copyright).

The second part of the preemption test also is satisfied, because the Copyright Act grants copyright owners the exclusive right to reproduce and distribute copies of the work to the public.  See 17 U.S.C. § 106.  To the extent Plaintiff attempts to base an unfair competition claim on his allegations that Defendants "converted" and "copied" his Treatment, his claim is preempted.  See, e.g., RDF Media Ltd. v. Fox Broad. Co., 372 F. Supp. 2d 556, 565-66 (C.D. Cal. 2005) (dismissing unfair competition claim as preempted by federal copyright law); Bethea, 2005 U.S. Dist. Lexis 46944, at *50 ("[u]nfair competition claims based on allegations of misappropriation of intellectual property are preempted by the Copyright Act.") (citing Kodadek v. MTV Networks, Inc., 152 F.3d 1209, 1213 (9th Cir. 1998)).

**C.    Plaintiff's Allegations Concerning "Credit" For Creation Of The Program Cannot Support A Claim Under Section 17200.**

Plaintiff's unfair competition claim includes the confusing allegation that Defendants unlawfully represented "that individuals other than Dillon created the Work" (FAC ¶ 64), apparently meaning that he was not given credit for the Program.[33]  But to the extent that he is attempting to base his claim on some theory of reverse-passing-off, by failing to give him the "credit" he claims he deserves, it is foreclosed by the United States Supreme Court's decision in Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 27 (2003).

In Dastar, the plaintiffs alleged that the defendant sold a video set "without

_____

[33] The statement is nonsensical, given that the FAC defines the "Work" as Plaintiff's Treatment.  FAC ¶ 46.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

proper credit" to plaintiffs, which they claimed constituted "reverse passing off" under the Lanham Act.  The Supreme Court held that allowing such a claim for "communicative products" would "conflict with the law of copyright, which addresses the subject specifically."  Id. at 33.  Consequently, the plaintiffs' claim failed.  Id. at 38; see also Turtle v. Castle Records Inc., 2004 U.S. Dist. Lexis 29124, at *14 (N.D. Cal. June 1, 2004) (unfair competition claim "based on failure to properly identify" copyright owner fails); Williams v. UMG Recordings, 281 F. Supp. 2d 1177, 1183 (C.D. Cal. 2003) (same re: dismissal of Lanham Act claim).

This principle has been applied directly to preclude unfair competition claims under California law.  See Aagard v. Palomar Builders, Inc., 344 F. Supp. 2d 1211, 1218 (E.D. Cal. 2004) ("state law claims which rely upon reverse palming off of communicative products also conflict with – and are, therefore, preempted by – federal copyright law.") (internal citations omitted).  Thus, to the extent that Plaintiff's unfair competition claim is predicated on Defendants' alleged failure to properly credit him, his claim is barred under Dastar and its progeny.

In summary, none of the purported conduct identified in Plaintiff's Second Cause of Action can support a claim under Section 17200.  For these reasons, his attempt to convert his copyright and contract claims into tort claims fails, and the Second Cause of Action should be dismissed with prejudice.

### D.      Plaintiff Is Not Entitled To Any Relief Under Section 17200.

Section 17200 does not authorize the recovery of damages or attorneys' fees, nor is there a "disgorgement of profits" remedy available.[34]  Consequently, the only remedies available to private plaintiffs are injunctive relief and restitution.  See Cel-Tech, 20 Cal. 4th at 179.  Neither is available here.  First, Plaintiff cannot seek "restitution," because there is no allegation that Defendants acquired money or

---

[34] Bank of the West v. Superior Court, 2 Cal. 4th 1254, 1266, 10 Cal. Rptr. 2d 538 (1992); Dean Witter Reynolds, Inc. v. Superior Court, 211 Cal. App. 3d 758, 774, 259 Cal. Rptr. 789 (1989); Cel-Tech, 20 Cal. 4th at 179.

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

property <u>from</u> him that he asks this Court to restore.  <u>See</u> Bus. & Prof. Code § 17203.

<u>Second</u>, Plaintiff cannot obtain injunctive relief that interferes with the production and distribution of an expressive work, like the Program.  It is well established that the First Amendment prohibits such prior restraints on speech.[35]  Because there is no remedy available to Plaintiff under Section 17200, his Second Cause of Action should be dismissed for this independent reason.

## IV.   PLAINTIFF'S CLAIM FOR BREACH OF CONTRACT AGAINST NBC AND UTN SHOULD BE DISMISSED.

To state a claim for breach of contract under California law, plaintiff must show "(1) the existence of a contract; (2) plaintiff's performance or excuse for non-performance; (3) defendant's breach; and (4) damage to plaintiff resulting therefrom."  <u>Craigslist, Inc. v. Naturemarket, Inc.</u>, 694 F. Supp. 2d 1039, 1059 (N.D. Cal. 2010).  The FAC alleges that Plaintiff communicated his "idea" for a television program, and gave his Treatment, to Defendant Hurwitz.  <u>See</u> FAC ¶¶ 2, 26-32, 36-39.  These communications provide the <u>sole</u> basis for Plaintiff's purported implied oral contract claim, which allegedly arises from an implied "understanding" he claims existed between him and Hurwitz.  FAC ¶¶ 26-28, 33.  There is <u>no</u> allegation that Plaintiff ever communicated with anyone at NBC or UTN.  Nor are there <u>any</u> facts alleged in the FAC that would support a finding that a freelance producer like Hurwitz had the actual or apparent authority to bind either of these companies.  Instead, in an effort to avoid dismissal of these claims, Plaintiff added the bald assertion that Hurwitz had authority.  (FAC ¶ 72.)  Because this kind of conjectural language cannot impute binding contractual obligations to third parties, Plaintiff's

---

[35] <u>See</u>, <u>e.g.</u>, <u>Hunt v. NBC</u>, 872 F.2d 289 (9th Cir. 1988) (upholding district court's refusal to enjoin the broadcast of a docudrama that portrayed defendant committing the murder for which he was about to be tried, despite claim that depiction was false); <u>CBS, Inc. v. Davis</u>, 510 U.S. 1315, 1317, 114 S. Ct. 912, 127 L.Ed.2d 358 (1994) (Blackmun, J.) (staying injunction barring broadcast, even though CBS allegedly acquired videotape through "calculated misdeeds"); <u>Hurvitz v. Hoefflin</u>, 84 Cal. App. 4th 1232, 1241, 1243, 101 Cal. Rptr. 2d 558 (2000) (same).

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

breach of contract claim against NBC and UTN fails.

California recognizes two types of authority that are sufficient to bind a third party "principal" to a contract:  actual authority and ostensible authority.  Actual authority is that which "a principal intentionally confers upon the agent," or "by want of ordinary case, allows the agent to believe himself to possess."  Cal. Civ. Code § 2316.  The FAC, however, lacks any factual allegations showing that NBC or UTN conferred upon Hurwitz any authority to bind either company to purchase or produce shows from third parties.  See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009) ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) ("[f]actual allegations must be enough to raise a right to relief above the speculative level.").  Indeed, the FAC alleges only that Plaintiff believed that Hurwitz was "under contract" with NBC and/or UTN; and that Plaintiff "believed" that Hurwitz either "produce[d] shows" for NBC, "or, at least, had the opportunity to present" shows to NBC.  FAC ¶ 25.  None of these allegations present facts sufficient to show that Hurwitz had authority to bind NBC or UTN.  See Van't Rood v. County of Santa Clara, 113 Cal. App. 4th 549, 572, 6 Cal. Rptr. 3d 746 (2003) ("[t]he fact that parties had a preexisting relationship is not sufficient to make one party the agent for the other.") (citing Kim v. Sumitomo Bank, 17 Cal. App. 4th 974, 983, 21 Cal. Rptr. 2d 834 (1993)).   "Persons dealing with an assumed agent are bound at their peril to ascertain the extent of the agent's authority."  Van't Rood, 113 Cal. App. 4th at 573 (brackets omitted).  NBC and UTN cannot be bound to a contract – let alone an implied contract – simply because Plaintiff claims he thought Hurwitz could do so.

Nor can Plaintiff allege facts sufficient to establish that Hurwitz had ostensible authority to bind NBC or UTN.  Ostensible authority occurs when a principal "causes or allows a third person to believe the agent to possess" valid authority to bind the principal.  Cal. Civ. Code § 2317; see also United States CFTC

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1  v. Paron Capital Mgmt., LLC, 2012 U.S. Dist. Lexis 49154, at *9 (N.D. Cal. April 6,

2  2012).  Importantly, for ostensible authority, "the representations of the purported

3  agent are irrelevant; instead the relevant inquiry is whether … the principals, did

4  anything that intentionally or negligently caused" the plaintiff to reasonably believe

5  that the agent was authorized.  Id. (emphasis added).  Plaintiff never communicated

6  at all with NBC or UTN; consequently, he cannot allege that either company did

7  anything to suggest that Hurwitz had authority to bind them to contracts.

8  Consequently, Plaintiff's contract claim against NBC and UTN should be dismissed.

9  **V.      PLAINTIFF'S INDUCEMENT CLAIM SHOULD BE DISMISSED.**

10          Plaintiff also failed to allege facts sufficient to state a claim for inducing

11  breach of contract against NBC or UTN.  A claim for inducing a breach of contract in

12  California requires:  (1) a valid contract between plaintiff and a third party; (2)

13  defendant's knowledge of the contract; (3) defendant's intentional acts designed to

14  induce a breach of the contract; (4) actual breach of the contract; and (5) resulting

15  damage.  Oracle Am. v. Serv. Key, 2012 U.S. Dist. Lexis 171406, at *22 (N.D. Cal.

16  2012) (quoting Quelimane Co. v. Stewart Title Guaranty Co., 19 Cal. 4th 26, 55, 77

17  Cal. Rptr. 2d 709 (1998)).  Even assuming, arguendo, that there was a valid implied

18  oral contract between Plaintiff and Hurwitz, the FAC fails to allege any facts

19  supporting a claim that NBC and UTN intended to induce a breach of that contract.

20          Instead, the FAC makes the conclusory allegation that "NBC and Universal

21  intended to cause, and in fact caused, Hurwitz to breach his agreement with Dillon by

22  encouraging Hurwitz to produce 'Stars Earn Stripes,' …."  FAC ¶ 80.  This

23  "threadbare recital" of an inducement claim fails to meet Plaintiff's pleading burden.

24  Iqbal, 556 U.S. at 678; see also Athena Feminine Techs. Inc. v. Wilkes, 2011 U.S.

25  Dist. Lexis 103209, at *22 (N.D. Cal. Sept. 13, 2011) (dismissing inducement claim

26  because plaintiff failed to allege knowledge of contract or acts intended to induce

27  breach).  Because Plaintiff does not and cannot allege any facts that would support a

28

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

claim that NBC or Universal intended to cause or actually caused Hurwitz to breach a purported contract with Plaintiff, his inducement claim fails.

Finally, Plaintiff cannot state a claim for inducement against NBC or UTN because he claims that they are <u>parties</u> to the purported contract.  <u>See</u> FAC ¶¶ 71-76. It is axiomatic that a party cannot, as a matter of law, induce the breach of a contract to which it is a party.  <u>See</u> <u>Aqua Connect, Inc. v. Code Rebel, LLC</u>, 2011 U.S. Dist. Lexis 110092, at *22-23 (C.D. Cal. Sept. 26, 2011) (dismissing inducing claims because "[o]nly a 'stranger to a contract may be liable in tort for intentionally interfering with the performance of the contract'") (quoting <u>Pacific Gas & Electric Co. v. Bear Stearns & Co.</u>, 50 Cal. 3d 1118, 1126, 270 Cal. Rptr. 1  (1990)). Accordingly, Plaintiff's Fourth Cause of Action should be dismissed.

## VI.   CONCLUSION

For all the reasons set forth above, this Court should dismiss Plaintiff's First Cause of Action for copyright infringement in its entirety, without leave to amend, and should award Defendants their costs and reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.  In addition, this Court should dismiss Plaintiff's Second Cause of Action for unfair business practices, and Fourth Cause of Action for inducing breach of contract in their entirety, without leave to amend.[36]  Finally, because Plaintiff has not and cannot allege any facts to support his purported implied oral contract claim against NBC or UTN, his Third Cause of Action against those defendants should be dismissed, without leave to amend.

Dated: March 15, 2013

By: /s/ Kelli L. Sager

Kelli L. Sager

Attorneys for Defendants

---

[36] Plaintiff already has amended his complaint once.  Because he cannot cure the defects in his claims by further pleading, dismissal should be without leave to amend. <u>See</u> <u>Chaset v. Fleer/Skybox Int'l</u>, 300 F.3d 1083, 1087-88 (9th Cir. 2002).

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# SAGER DECLARATION

1 | **DAVIS WRIGHT TREMAINE LLP**
865 S. FIGUEROA ST.
2 | SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
3 | TELEPHONE (213) 633-6800
FAX (213) 633-6899

4 | KELLI L. SAGER (State Bar No. 120162)
kellisager@dwt.com
5 | NICOLAS A. JAMPOL (State Bar No. 244867)
nicolasjampol@dwt.com
6 | KATHLEEN CULLINAN (State Bar No. 287604)
kathleencullinan@dwt.com
7 |

8 | Attorneys for Defendants NBCUniversal Media,
LLC; Dick Wolf; Mark Burnett; David A. Hurwitz;
9 | Universal Television Networks, LLC; One Three
Television, LLC; Wolf Reality, LLC; and
10 | Bill's Market & Television Productions

11 | **UNITED STATES DISTRICT COURT**

12 | **CENTRAL DISTRICT OF CALIFORNIA**

13 |

14 | RICHARD DILLON,                    )  Case No. CV12 9728-SJO (AJWx)
                                    )
15 |                 Plaintiff,         )  **DECLARATION OF KELLI L.**
                                    )  **SAGER IN SUPPORT OF**
16 |         vs.                        )  **DEFENDANTS' MOTION TO**
                                    )  **DISMISS PLAINTIFF'S FIRST**
17 | NBCUNIVERSAL MEDIA, LLC; DICK      )  **AMENDED COMPLAINT**
      WOLF; MARK BURNETT; DAVID A.     )
18 | HURWITZ; UNIVERSAL TELEVISION      )  Hearing Date:    June 10, 2013
      NETWORKS, LLC; ONE THREE          )  Time:            10:00 a.m.
19 | TELEVISION, LLC; WOLF REALITY,     )  Courtroom:       1 (2nd Floor)
      LLC; and BILL'S MARKET &          )
20 | TELEVISION PRODUCTIONS,            )  [Motion To Dismiss Plaintiff's First
                                    )  Amended Complaint; Request For
21 |                 Defendants.        )  Judicial Notice; Declaration Of Amanda
                                    )  Harrell with Exs. 1 Through 9;
22 |                                    )  Declaration of Saskia R. Thompson with
                                    )  Exhibit 10; Declaration Of Kathleen
23 |                                    )  Cullinan with Exs. 11 Through 43;
                                    )  Notice Of Manual Filing; Notice Of
24 |                                    )  Lodging Of Exs. 1 Through 11; and
                                    )  [Proposed] Order Filed Concurrently]
25 |                                    )
                                    )
26 |                                    )
                                    )
27 | _____)
28 |

SAGER DECLARATION
.

## DECLARATION OF KELLI L. SAGER

I, Kelli L. Sager, declare:

1.     I am an attorney admitted to practice before all the courts of the State of California and before this Court.  I am a partner in the law firm of Davis Wright Tremaine LLP, and I am lead counsel representing defendants NBCUniversal Media, LLC ("NBCU"), Dick Wolf, Mark Burnett, David A. Hurwitz, Universal Television Networks, LLC ("UTN"), One Three Television, LLC, Wolf Reality, LLC, and Bill's Market & Television Productions.  The facts stated below are of my own personal knowledge.  If called to testify, I could and would competently testify to these facts.

2.     On February 1, 2013, I participated in a conference of counsel pursuant to Local Rule 7-3 with James Halter and David Marek, counsel of record for Plaintiff Richard Dillon, concerning Defendants' anticipated motion to dismiss certain claims and parties from the original complaint.  My colleague Nicolas Jampol also participated in the conference.  Because Plaintiff's lead attorneys are located in New York City, Mssrs. Halter and Marek indicated that they were not able to meet with me in person, so we conducted the conference telephonically.  During the call, I discussed with Mssrs. Halter and Marek each of the arguments Defendants intended to raise in a motion to dismiss.  Following that conference, Plaintiff's counsel agreed to file an amended complaint, and the parties stipulated to a schedule, which was approved by the Court.

3.     Plaintiff's counsel filed the First Amended Complaint ("FAC") on February 22, 2013.  Among other changes, the FAC removed the standalone conspiracy claim that previously had been alleged against all the Defendants, and it dropped the inducement of breach of contract claim against Defendants Wolf, Wolf Reality, Burnett, and One Three, so that it was alleged only against NBCU and UTN. The FAC also made certain changes to the pleading relating to the breach of contract claim and the unfair business practices claim.

1

SAGER DECLARATION
.

4.      On March 8, 2013, Mr. Jampol and I participated in another conference of counsel pursuant to Local Rule 7-3 with counsel for Plaintiff, Mssrs. Halter and Marek.  Because Mssrs. Halter and Marek again indicated that they were not able to meet with me in person, since their office is located in New York, we conducted the conference telephonically.

5.      During the call, I discussed each of Defendants' anticipated grounds for moving to dismiss portions of the FAC, and attempted to reach an agreement that would eliminate or narrow the motion.  Among other things, I discussed with Plaintiff's counsel the argument that there is no substantial similarity of protected expression between Plaintiff's treatment and Defendants' television program (which we had discussed at length in the prior call); the fact that the FAC did not adequately allege that any of the Defendants other than Mr. Hurwitz ever had access to Plaintiff's treatment, as necessary to state a claim for copyright infringement; that none of the alleged "unlawful business practices" described in the FAC could support an unfair competition claim, and the FAC did not resolve the deficiencies in that claim that we discussed during the prior call; that the unfair business practices claim relied on predicate acts that did not involve the Wolf/Burnett Defendants, who are nonetheless named in that cause of action; that Plaintiff did not allege facts to support a finding that Defendant Hurwitz had the authority to bind either NBCU or UTN in an implied oral contract with Plaintiff, and the revised pleading did not cure the defect that we had previously discussed with respect to this argument; and that the FAC does not sufficiently allege any intentional acts undertaken by NBCU or UTN that were designed to induce a breach of the purported implied oral contract.  Mssrs. Halter and Marek indicated at the end of the call that they would consider the issues we had discussed, and let us know if they would consider further amending the pleading.

6.      On Tuesday, March 12, I received a voicemail message from Mr. Halter advising me that Plaintiff was not going to amend his pleading further, or remove any

2

SAGER DECLARATION
.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

of the claims contained in the FAC.  Because the parties were unable to resolve the remaining disputes, Defendants are concurrently filing their Motion To Dismiss Plaintiff's First Amended Complaint.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed on March 15, 2013 in Los Angeles, California.

 /s/ Kelli L. Sager  
Kelli L. Sager

SAGER DECLARATION

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899