UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

==============================================================================

**CASE NO.:** <u>CV 12-09728 SJO (AJWx)</u>       **DATE:** <u>June 18, 2013</u>

**TITLE:**   <u>Richard Dillon v. NBCUniversal Media LLC, et al.</u>

==============================================================================
**PRESENT: THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

Victor Paul Cruz                                    Not Present
Courtroom Clerk                                     Court Reporter

**COUNSEL PRESENT FOR PLAINTIFF:**       **COUNSEL PRESENT FOR DEFENDANTS**

Not Present                                         Not Present

==============================================================================
**PROCEEDINGS (in chambers): ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** [Docket No. 25]

This matter is before the Court on Defendants NBCUniversal Media, LLC ("NBC"), Dick Wolf ("Wolf"), Mark Burnett ("Burnett"), David A. Hurwitz ("Hurwitz"), Universal Television Networks ("Universal"), One Three Television, LLC ("One Three"), Wolf Reality, LLC ("Wolf Reality"), and Bill's Market & Television Productions' ("BMTP") (collectively, "Defendants") Motion to Dismiss Plaintiff's First Amended Complaint ("Motion"), filed March 15, 2013. Plaintiff Richard Dillon ("Plaintiff") filed his Opposition on April 15, 2013, to which Defendants filed their Reply on May 13, 2013.[1] The Court found this matter suitable for disposition without oral argument and vacated the hearing set for June 10, 2013. *See* Fed. R. Civ. P. 78(b). For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion.

I.   <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

Plaintiff alleges the following facts. Plaintiff is a former New York City police officer and detective who served in the New York Police Department for twenty years. (Am. Compl. ("FAC") ¶ 10, ECF No. 19.) Plaintiff has also worked as a consultant and technical advisor for television shows. (FAC ¶ 10.) NBC is a corporation engaged in producing and broadcasting television programming in the United States. (FAC ¶ 11.) Universal is a studio that produces television shows, including the NBC program "Stars Earn Stripes" (the "Program"). (FAC ¶ 12.) Burnett, Wolf, and Hurwitz and their respective television production companies One Three, Wolf Reality, and BMTP, are all producers of the Program. (FAC ¶¶ 13-18.)

---

[1]   The parties stipulated to this briefing schedule with the Court's permission. (*See generally* Order Re: Briefing Schedule for Mot., ECF No. 33.)

CASE NO.:   CV 12-09728 SJO (AJWx)                     DATE:  June 18, 2013

In May 2011, Plaintiff conceived of an idea for a television series entitled "Celebrity SEALS," for which Plaintiff wrote a treatment (the "Treatment"). (FAC ¶ 19.) The Treatment proposes a reality show that pits celebrity contestants against one another in competitive events designed to mimic the training received by Navy SEALs. (FAC ¶ 19, Ex. A.) Each celebrity would have a personal coach such as a former SEAL. (FAC ¶ 19, Ex. A.) After each event, the celebrities are judged by a panel of experts (e.g. former SEALs, retired marines) and the host of the show, with one contestant being eliminated. (FAC ¶ 19, Ex. A.) The skills and challenges include the following: "surf torture"; heavy weapons qualification; underwater demolition; drown proofing; hostage recovery; immediate action drills; over-the-beach scenarios; ambush techniques; free-fall parachuting- sniper lessons; and "hell week." (FAC ¶ 19, Ex. A.) The celebrities would be competing for a $100,000 check to be donated to the celebrity winner's choice of charity. (FAC ¶ 19, Ex. A.) The Treatment expects that many celebrities will drop out of the competition prior to its completion. (FAC ¶ 19, Ex. A.) The series would also feature behind-the-scenes drama of the celebrities as they live together in a military barracks and are expected to behave "in a regimented manner as well as do menial tasks, all under the supervision of their tough coaches." (FAC ¶ 19, Ex. A.) The Treatment proposes a number of celebrities from television, film, and sports, including "fitness buffs and/or excellent athletes, or perhaps, in a humorous juxtaposition, exactly the opposite." (FAC ¶ 19, Ex. A.) The host of the series would be a retired SEAL. (FAC ¶ 19, Ex. A.)

On May 19, 2011, Plaintiff registered the Treatment with the Writers Guild of America East, Inc. (FAC ¶ 20.) Plaintiff also registered the Treatment with the United States Copyright Office on June 23, 2012. (FAC ¶ 20.) After creating the Treatment, Plaintiff and co-creator Jonathan Moss ("Moss") began contacting television producers. (FAC ¶ 21.) In July 2011, Plaintiff and Moss were referred to Hurwitz, who Plaintiff and Moss believed "had an agreement with NBC whereby he would either produce shows for the network, or, at least, had the opportunity to present shows to NBC." (FAC ¶¶ 24-25.) Plaintiff also alleges that "upon information and belief, Hurwitz is under contract with NBC/Universal." (FAC ¶ 25.)

On August 14, 2011, Moss sent an email to Hurwitz inquiring if Hurwitz would be willing to discuss a reality project. (FAC ¶ 26, Ex. B.) Hurwitz responded by requesting if Moss could meet with him to discuss the project. (FAC ¶ 27, Ex. B.) On August 17, 2011, Plaintiff, Moss, and Hurwitz agreed to discuss the project on a conference call later that week. (FAC ¶ 28, Ex. B.) On August 19, 2011,[2] Moss and Hurwitz held a conference call where Moss told Hurwitz about their idea for "Celebrity SEALs". (FAC ¶ 29.) Hurwitz praised the idea. (FAC ¶ 30.) Hurwitz thereafter sent Moss an email that stated, "I look forward to reading the treatment and seeing if we can't make something happen." (FAC ¶ 31, Ex. B.) The following day, August 20, 2011, Moss

---

[2]  The FAC states that this meeting occurred on "Friday, August 17, 2011," however August 17, 2011, was a Wednesday. The Court presumes that Plaintiff intended to refer to Friday, August 19, 2011.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | |
|---|---|
| **CASE NO.:** <u>CV 12-09728 SJO (AJWx)</u> | **DATE:** <u>June 18, 2013</u> |

responded and stated, "It was a pleasure speaking with you yesterday. [Plaintiff] and I are thrilled you think Celebrity Seals has strong upside potential." (FAC ¶ 32, Ex. B.) The Treatment was attached to the email. (FAC ¶ 32, Ex. B.) On August 28, 2011, Moss sent a follow-up email to Hurwitz asking "if [Hurwitz was] able to briefly speak with NBC about Celebrity Seals?" (FAC ¶ 36, Ex. B.) Later that day Hurwitz responded, "[A]mazing timing... just leaving a stunt test where I bounced it off the exec that covers our show [Fear Factor]. He said that he thought it was cool but that it felt too niche and cable for them." (FAC ¶ 37, Ex. B.) Moss responded by asking if Hurwitz was still interested in staying involved with the project. (FAC ¶ 38, Ex. B.) Hurwitz emailed back on August 29, 2011, and stated that "as much as I'd like to jump in with you I am a little too busy right now with Fear Factor to do right by you. Best of luck and feel free to use me as a sounding board as you move forward." (FAC ¶ 39, Ex. B.)

In August 2012, Plaintiff learned that Defendants had decided to produce and broadcast the Program, which Plaintiff alleges is "based upon and utiliz[es] the detailed ideas and story lines [Plaintiff] and Moss had pitched as 'Celebrity SEAL[s].'" (FAC ¶¶ 41-42.) Defendants credit Hurwitz, Wolf, and Burnett with creating the Program. (FAC ¶ 43.) Defendants never requested or obtained Plaintiff's consent to use the Treatment, nor have Defendants compensated Plaintiff. (FAC ¶ 44.)

Plaintiff filed his Complaint on November 14, 2012. Pursuant to a joint stipulation, Plaintiff filed his FAC on February 22, 2012. The FAC asserts the following causes of action: (1) copyright infringement against all Defendants; (2) violation of California's Unfair Compeition Law (the "UCL"), California Business and Professions Code section 17200 *et. seq.* against all Defendants; (3) breach of contract against Hurwitz, NBC, and Universal; and (4) inducement of breach of contract against NBC and Universal. (*See generally* FAC.) On March 15, 2013, Defendants filed the instant Motion.

II.  DISCUSSION

In reviewing a motion to dismiss under Rule 12(b)(6), a court may only consider the complaint, documents incorporated by reference in the complaint, and matters of judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). A court must accept as true the allegations of the complaint, *Hosp. Bldg. Co. v. Trs. of Rex. Hosp.*, 425 U.S. 738, 740 (1976), and "the complaint is to be liberally construed in favor of plaintiff," *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). Dismissal is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim." *Abramson v. Brownstein*, 897 F.2d 389, 391 (9th Cir. 1990).

Dismissal under Rule 12(b)(6) is proper if the claim lacks a "cognizable legal theory" or "sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To plead sufficient facts, a party must proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** CV 12-09728 SJO (AJWx)      **DATE:** June 18, 2013

the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). This plausibility standard requires "more than a sheer possibility that the defendant has acted unlawfully." *Id.*

Defendants contend that dismissal is appropriate because (1) Plaintiff's copyright claim fails because Plaintiff does not allege that Wolf and Burnett had access to the Treatment and the Treatment is not substantially similar to the Program; (2) Plaintiff's UCL claim fails for a number of reasons; (3) Plaintiff's claim for breach of contract against NBC and Universal fails because Hurwitz did not have actual or apparent authority to bind these parties; and (4) Plaintiff's claim for inducement of breach of contract against NBC and Universal fails because Plaintiff does not allege sufficient factual content. (*See generally* Mot., ECF No. 25) The Court considers each argument in turn.

    A.     Plaintiff's Copyright Claim

To assert a valid claim for copyright infringement, Plaintiff must show "(1) ownership of a valid copyright and (2) copying by [Defendants] of protectable elements of the work." *CDN Inc. v. Kapes*, 197 F.3d 1256, 1258 (9th Cir. 1999). When direct evidence of copying is unavailable, copying may be shown by (1) evidence of the defendant's access to the copyrighted work; and (2) substantial similarity between between the copyrighted work and the work of the defendant. *See Chase-Riboud v. Dreamworks, Inc.*, 987 F. Supp. 1222, 1224-25 (C.D. Cal. 1997). Plaintiff's ownership of the Treatment is not at issue here—rather, Defendants argue that Plaintiff cannot establish that Defendants copied the Treatment. Specifically, Defendants argue both that (1) Plaintiff has failed to "allege <u>any</u> facts supporting a claim that the Wolf/Burnett defendants had access to the Treatment" and that (2) the Program is not substantially similar to the Treatment. (Mot. 2-12.)

    1.     Access to the Treatment

Defendants contend that Plaintiff's claims for copyright infringement against Burnett, Wolf, and their respective production companies must fail because Plaintiff only alleges that Hurwitz had access to the Treatment. (Mot. 2 n.10.) Plaintiff responds that he has adequately alleged that all Defendants had access to the Treatment because the FAC alleges that Hurwitz has a "known business relationship with NBC." (Opp'n 4-5.) "Proof of access requires an opportunity to view or to copy plaintiff's work." *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482 (9th Cir. 2000) (internal quotation marks omitted). There must be "more than a bare possibility" of access to the work in question. *Id.* Evidence of reasonable access to a work may take the form of "a particular chain of events . . . between the plaintiff's work and the defendant's access to that work (such as through dealings with a publisher or record company)." *Id.*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.:   CV 12-09728 SJO (AJWx)           DATE: June 18, 2013

The Court finds that Plaintiff has alleged that Defendants had a reasonable opportunity to access the Treatment.  Plaintiff alleges, and Defendants admit, that Plaintiff sent Hurwitz a copy of the Treatment.  (FAC ¶ 32.)  Hurwitz approached an NBC executive about Plaintiff and Moss's Treatment. (FAC ¶ 37.)  Plaintiff also alleges that Hurwitz has a business relationship with NBC. (FAC ¶ 25.)  More importantly, Plaintiff alleges that Hurwitz, Burnett, and Wolf are all credited with creating the Program, and that all three defendants share equally in the production credit.  (FAC ¶ 43.)  Accordingly, construing the allegations of the FAC liberally in favor of Plaintiff, it is reasonable to infer that Hurwitz shared the Treatment with Burnett and Wolf, as it is alleged that they worked together on the Program.  This is sufficient to survive a motion to dismiss.

       2.      <u>Substantial Similarity</u>

The Court notes as an initial matter that the Ninth Circuit has "expressed a certain disfavor for summary judgment on questions of substantial similarity." *Pasillas v. McDonald's Corp.*, 927 F.2d 440, 442 (9th Cir. 1991).  Thus, the Court may only find that the Treatment and the Program are not substantially similar as a matter of law if the Court concludes that "no reasonable jury could find that the works are substantially similar, or if it concludes that the similarities between the two works pertain only to unprotected elements of the works." *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1131 (C.D. Cal. 2007) (citing *Boyle v. Stephens, Inc.*, No. 97 Civ. 1361(SAS), 1998 WL 80175, at *4 (S.D.N.Y. Feb. 25, 1998); *see also Christianson v. West Pub. Co.*, 149 F.2d 202, 203 (9th Cir. 1945) (upholding district court's dismissal of a claim for copyright infringement on a motion to dismiss).

Courts in the Ninth Circuit employ the objective "extrinsic test" when determining whether there is substantial similarity as a matter of law. *Funky Films, Inc. v. Time Warner Entm't Co., L.P.*, 462 F.3d 1072, 1077 (9th Cir. 2006).  Under the extrinsic test, the Court "must take care to inquire only whether the *protectable elements, standing alone*, are substantially similar." *Cavalier v. Random House*, 297 F.3d 815, 822 (9th Cir. 2002) (internal quotation marks omitted).  As such, the Court "focuses on articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events in the two works." *Funky Films*, 462 F.3d at 1077 (internal quotation marks omitted).  Further, the Court must compare "not the basic plot ideas for stories, but the actual concrete elements that make up the total sequence of events."  *Id.*; *see also Cavalier*, 297 F.3d at 823 (explaining that "[c]opyright law only protects expression of ideas, not the ideas themselves").  So-called "*scenes à faire*, which flow naturally from generic plot-lines, are not protectable." *Funky Films*, 462 F.3d at 1077; *see also Wild v. NBC Universal, Inc.*, 788 F. Supp. 2d 1083, 1099 (C.D. Cal. 2011) (defining *scenes à faire* as "scenes that necessarily result from the choice of a setting or situation").

In the context of a reality television program such as the Program, generic elements such as a host, celebrity contestants, contestants living in close proximity with one another, contestant interviews, competitions between contestants, the judging of contestants by a panel of experts, the elimination of contestants, and the awarding of a prize either to contestants or to charity are

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** <u>CV 12-09728 SJO (AJWx)</u>   **DATE:** <u>June 18, 2013</u>

not protectable under copyright law. *See Bethea v. Burnett*, No. CV 04-7690JFWPLAX, 2005 WL 1720631, at *12 (C.D. Cal. June 28, 2005) (stating that "stock elements" of the reality television genre are not protectable). Rather, the Court must determine whether the Treatment and the Program are substantially similar based on the specific, articulable elements identified by the Ninth Circuit.[3] After examining the Treatment and viewing the Program, the Court concludes that, drawing all reasonable inferences in favor of Plaintiff, there are enough similar elements for Plaintiff to state a claim of copyright infringement at this stage of the litigation.

      a. <u>Theme and Mood</u>

The theme and mood of the Program is one of appreciation and respect for military personnel, law enforcement, and first responders and the sacrifices they make in the line of duty. As stated by Defendants, the Program is "an unabashedly positive tribute to military personnel, law enforcement, and first responders." (Mot. 9.) Similarly, the Treatment provides that "[w]hen the President of the Unite[d] States calls on the military to execute the most dangerous assignments, . . . he sends in the military's most physically powerful, courageous, and mentally strong men and women. Spending over a year in specialized training, which many cannot complete, these people, the toughest of the tough, become SEALs." (FAC Ex. A.) Thus, both works are generally reverential of the men and women of the armed forces and the service they perform, and both the Treatment and the Program highlight the dedication required to become proficient in fulfilling these important duties.

      b. <u>Plot and Sequence of Events</u>

The respective plots of the Treatment and the Program also share similarities. Both works pair a celebrity contestant with a coach who is in the military. In both shows, the celebrity contestants compete in skill-based competitions based on military scenarios. For example, the Treatment

---

[3] Defendants argue that the Court should also take judicial notice of previous reality television programs from which Defendants contend the Treatment is derived. (*See generally* Req. for Judicial Notice ("RJN"), ECF No. 26.) The Court finds that judicial notice of the Program itself is appropriate, as it is referenced in the FAC. The Court will not consider the other submitted exhibits, however, because it cannot be said that they are "generally known" and so fit for judicial notice. Fed. R. Evid. 201(b)(1). It is also not readily apparent from Defendants' RJN that the attached exhibits were the versions of the programs that were actually broadcast such that they are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Rather, Defendants' declarant states that the attached exhibits "reflect[] the content of the program[s] as it was delivered to the network." (*See* Decl. of Amanda Harrell in Supp. of Defs.' Mot. ¶¶ 7-15, ECF No. 26-1.) It is at least possible that alterations were made at the network before the Program was broadcast.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| **CASE NO.:** <u>CV 12-09728 SJO (AJWx)</u> | **DATE:** <u>June 18, 2013</u> |

describes such potential tasks as "heavy weapon qualification," "over-the-beach scenarios and ambush techniques," and "sniper lessons." (FAC Ex. A.) The first episode of the Program, entitled "Amphibious Assault," has the contestants dropping from a helicopter into water, taking a boat onto shore, and demolishing buildings with explosives. (RJN Ex. 10.) The second episode features a sniper duel between two of the celebrity contestants. (RJN Ex. 10.) These "missions" are similar to the tasks described in the Treatment.

Defendants observe that there are some differences between the works in terms of plot. For instance, Defendants note that, unlike the Treatment, there is no panel of experts in the Program, and the other contestants do not vote on who is eliminated. (Mot. 10.) As already discussed, however, these elements are stock elements of the reality television genre that play no role in the substantial similarity analysis.

   c.  <u>Dialogue</u>

Both Plaintiff and Defendants agree that because the works are both unscripted reality television programs, dialogue is not relevant to the Court's analysis. (Mot. 10; Opp'n 9, ECF No. 37.)

   d.  <u>Setting</u>

As noted by Plaintiff, both works feature "military exercises at a training facility." (Opp'n 10.) There is a distinction between the Program and the Treatment, though, in that the Treatment contemplates that the celebrity contestants would live together in a military barracks, and they would be depicted performing "menial tasks." (FAC Ex. A.) The Program, by contrast, does not feature the contestants living together, nor does it depict them performing daily activities. (RJN Ex. 10.) Nevertheless, this distinction by itself is insufficient for the Court to hold as a matter of law that the works are not substantially similar. *See Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1167 (9th Cir. 1977) ("Duplication or near identity is not necessary to establish infringement.").

   e.  <u>Characters</u>

The Treatment's list of proposed celebrity contestants is uncannily similar to the contestants chosen to participate in the Program. For example, the Treatment proposes as a contestant Drew Lachey, a former member of the music group 98 Degrees. (FAC Ex. A, at 3.) The Program features as a contestant Drew Lachey's brother, Nick Lachey, who was also a member of 98 Degrees. (RJN Ex. 10.) The Treatment also proposes WWE professional wrestling stars Steve Austin and Chris Jericho (FAC Ex. A, at 3); the Program features Eve Torres, a former WWE professional wrestling star (RJN Ex. 10). Similarly, the Treatment proposes Brooke Burke, a model and former Dancing with the Stars contestant and host, as a celebrity contestant. (FAC Ex. A, at 3.) The Program features Samantha Harris, a model and former Dancing with the Stars host, as a co-host. (RJN Ex. 10.) Further, the Treatment proposes a list of "retired seals . . . who have

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** <u>CV 12-09728 SJO (AJWx)</u>         **DATE:** <u>June 18, 2013</u>

the 'it' factor" who could serve as host of *Celebrity SEALs*. (FAC Ex. A, at 3.) One of these is Jesse Ventura, a retired SEAL who was a professional wrestler for a time before entering politics and being elected governor of Minnesota. (FAC Ex. A, at 3.) One of the Program's hosts is General Wesley Clark, a former general in the United States Army who later entered politics. (RJN Ex. 10.) Other similarities abound.

Viewing the protectable elements of the works as a whole, the Court cannot conclude that they are not substantially similar on the pleadings. This is especially true in light of the high degree of access alleged by Plaintiff—that Plaintiff and Moss provided a copy of the Treatment to Hurwitz. In such situations, courts "require a lower standard of proof of substantial similarity." *Swirsky v. Carey*, 376 F.3d 841, 844 (9th Cir. 2004).

    B.    <u>Plaintiff's UCL Claim</u>

The UCL provides that "unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Because [the UCL] is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). Defendants contend that Plaintiff's UCL claim fails because (1) Plaintiff does not allege that he is a consumer or a competitor of Defendants such that he is entitled to the protections of the UCL; (2) unlawful UCL claims may not be predicated on a claim for breach of contract; (3) Plaintiff fails to allege a valid unfair UCL claim; (4) Plaintiff's UCL claim is preempted by federal copyright law; and (5) Plaintiff is not entitled to any remedies under the UCL. (Mot. 12-17.) The Court addresses each argument in turn.

        1.    <u>Whether Plaintiff is a Protected Consumer or Competitor Under the UCL</u>

California courts have explained that "[t]he UCL's purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 949 (2002). As such, dismissal of UCL actions is appropriate when the plaintiff is neither a competitor nor a consumer. *See Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 135 (2007) (upholding trial court's dismissal of UCL claim when "the alleged victims are neither competitors nor powerless, unwary consumers"). Here, Defendants argue that Plaintiff is clearly not a consumer because he did not acquire goods or services from Defendants, and he "does not allege facts to support a claim that he is a 'competitor'; to the contrary, he purportedly was trying to sell his concept <u>to</u> . . . Defendants." (Mot. 13-14 n.31.)

While the Court agrees that Plaintiff is not a consumer under the UCL, the Court finds that it may be reasonably inferred that Plaintiff was a competitor of Defendants for the purposes of Plaintiff's UCL claim. Plaintiff alleges that Defendants copied the key elements of the Treatment and used them to create the Program without crediting Plaintiff. (FAC ¶¶ 1, 4, 40, 41, 43, 44.) Thus, as pointed out by Plaintiff, "[Plaintiff] was trying to create a show and Defendants did, in fact, create

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| **CASE NO.:** CV 12-09728 SJO (AJWx) | **DATE:** June 18, 2013 |

a show." (Opp'n 14.) Plaintiff may therefore be considered a competitor of Defendants under the UCL.

### 2. Breach of Contract as the Basis for Plaintiff's Unlawful UCL Claim

Defendants next argue that Plaintiff's UCL claim fails insofar as it is predicated on Plaintiff's claim for breach of contract under the unlawful prong of the UCL. (Mot. 12-14.) The FAC alleges that "Defendants' unlawful business practices [under the UCL] include . . . breach of contract." (FAC ¶ 64.) However, "California courts have held that a[] breach of contract is not itself 'unlawful' conduct for purposes of California's UCL." *Boland, Inc. v. Rolf C. Hagen (USA) Corp.*, 685 F. Supp. 2d 1094, 1111 (E.D. Cal. 2010) (citing, *inter alia*, *Puentes v. Wells Fargo Home Mortg., Inc.*, 160 Cal. App. 4th 638, 645 (2008)). This is so because if "a simple breach of contract could form the basis for a [UCL] claim, then virtually every contract action could be converted into a business tort." *Unique Functional Prods., Inc. v. JCA Corp.*, No. 9-CV-265-JM-MDD, 2012 WL 367245, at *5 (S.D. Cal. Feb. 3, 2012). Plaintiff points to *Watson Laboratories, Inc. v. Rhone-Poulenc Rorer*, 178 F. Supp. 2d 1099, (C.D. Cal. 2011), where the court held that "a breach of contract may in fact form the predicate for [UCL] claims, **provided it also constitutes conduct that is 'unlawful, or unfair, or fraudulent.'**" *Id.* at 1117 n.12 (emphasis added). The emphasized language indicates that the court in *Watson* recognized the accepted view that an alleged breach of contract, in and of itself, cannot be the basis for a UCL claim under the unlawful prong.[4] Accordingly, Plaintiff's unlawful UCL claim fails to the extent that it is predicated solely on Defendants' alleged breach of contract.

### 3. Plaintiff's Unfair UCL Claim

Defendants also contend that "Plaintiff's rote allegations do not meet his burden of demonstrating conduct that is 'unfair' within the meaning of the [UCL]." (Mot. 13.) Where the plaintiff is a competitor, as here, "a business practice is 'unfair' only if it 'threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition.'" *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 254 (2010) (citing *Cel-Tech*, 20 Cal. 4th at 187).

The Court finds that Plaintiff adequately alleges an unfair business practice under the UCL. The FAC alleges, *inter alia*, that "Defendants have conspired to develop, film, and produce a show . . . that is a direct copy of [the Treatment] and intentionally lied to [Plaintiff] that neither NBC, Universal, nor Hurwitz was interested in working on, or producing, [the Treatment] as part of an effort to steal [Plaintiff's] work.'" (FAC ¶ 66; *see also* FAC ¶¶ 70-76.) These allegations, if proven,

---

[4] In any event, the UCL is a creation of California state law, and thus the interpretation of the court in *Watson* is not binding on this Court.

would constitute conduct that "significantly threatens or harms competition." *Drum*, 182 Cal. App. 4th at 254; *see Mattel, Inc. v. MGA Entm't, Inc.*, 782 F. Supp. 2d 911, 1013 (C.D. Cal. 2011) (finding that producing dolls similar to plaintiff's "may have harmed competition by potentially restricting the supply of [plaintiff's] products to consumers"). Plaintiff has thus alleged a valid unfair UCL claim.

> 4. Preemption of Plaintiff's UCL Claim

Defendants argue that Plaintiff's UCL claim is preempted by federal law for two reasons. First, Defendants argue that "to the extent Plaintiff tries to base a claim under [the UCL] on the alleged 'copying' of his Treatment, it is preempted by federal copyright law." (Mot. 14.) Pursuant to 17 U.S.C. § 301, states are forbidden from legislating in the area of copyright law. 17 U.S.C. § 301. The Ninth Circuit has explained that:

> In order for preemption to occur under the federal Copyright Act, two conditions must be satisfied. First, the content of the protected right must fall within the subject matter as described in 17 U.S.C. §§ 102 and 103. Second, the right asserted under state law must be equivalent to the exclusive rights contained in section 106 of the Copyright Act.

*Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1003 (9th Cir. 2001). It is undisputed that the Treatment falls within the ambit of subject matter protected by the Copyright Act pursuant to § 102. *See* 17 U.S.C. § 102(a)(6) (protecting authorship of "motion pictures and other audiovisual works"). Defendants argue that the second prong of the Copyright Act preemption test is also satisfied "[t]o the extent Plaintiff attempts to base an unfair competition claim on his allegations that Defendants 'converted' and 'copied' his Treatment." (Mot. 15.) Plaintiff responds that his UCL claim includes a "*Desny* claim of breaching a contract, stealing [Plaintiff's] work and lying to [Plaintiff] about Defendants' interest in [the Treatment] to cover up that theft" and that this claim is not preempted. (Opp'n 15.) The Court agrees.

In *Desny v. Wilder*, 46 Cal. 2d 715 (1956), the California Supreme Court held that a writer and producer form an implied contract when it is understood that the writer is disclosing an idea for a project on the condition that the writer will be paid if the idea is used by the producer. *Id.* at 738-39. If the producer then uses the idea but fails to compensate the writer, the writer has a valid cause of action for breach of contract under California law, known as a *Desny* claim. *Id.* The Ninth Circuit has explained that "rights created under California law emanating from *Desny* [are] qualitatively different from the rights protected by federal copyright law because a *Desny* claim

includes an added element: an agreement to pay for use of the disclosed ideas."[5] *Montz v. Pilgrim Films & Television, Inc.*, 649 F.3d 975, 980 (9th Cir. 2011).  The Court finds that the FAC alleges a *Desny* claim, in that it alleges that Defendants used Plaintiff's Treatment to create the Program but failed to compensate Plaintiff, thereby breaching an implied oral contract.  (FAC ¶¶ 70-76.) Because the *Desny* claim itself is not preempted by the Copyright Act, Plaintiff's UCL claim is likewise not preempted to the extent that it is predicated on Plaintiff's *Desny* claim.  *See Celestial Mechanix, Inc. v. Susquehanna Radio Corp.*, No. CV 03-5834-GHK(VBKx), 2005 WL 4715213, at *12 (C.D. Cal. Apr. 28, 2005) (finding that plaintiff's UCL "claim is not preempted to the extent that it is based upon claims that are likewise not preempted or otherwise dismissed").

Second, Defendants contend that Plaintiff's UCL claim is preempted "to the extent that he is attempting to base his claim on some theory of reverse-passing off, by failing to give him the 'credit' he claims he deserves" because of the Supreme Court's decision in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003).  *Dastar* is inapplicable to the instant case. In *Dastar*, the Supreme Court held that the plaintiff's claim for "reverse passing off," i.e., where a producer misrepresents someone else's goods or services as his own, under the Lanham Act was not cognizable because it conflicted with, and was thus preempted by, the law of copyright.  *Id.* at 33.  However, Plaintiff does not allege a violation of the Lanham Act, and it is clear that California law recognizes a *Desny* claim that is not preempted by federal copyright law, as established above.  As such, *Dastar* also does not act to preempt Plaintiff's UCL claim insofar as it is predicated on a *Desny* claim.

   6. <u>UCL Remedies</u>

Finally, Defendants aver that Plaintiff's UCL claim must fail because Plaintiff is not entitled to any relief under the UCL.  Plaintiffs under the UCL "are generally limited to injunctive relief and restitution."  *Cel-Tech*, 20 Cal. 4th at 179; *see* Cal. Bus. & Prof. Code § 17203.  The Court addresses Plaintiff's entitlement to these remedies separately.

   a. <u>Restitution</u>

The UCL provides that the Court "may make such orders or judgements . . . as may be necessary to restore to any person in interest any money or property, real or personal which may have been acquired by means of such unfair competition." Cal. Bus. & Prof. Code § 17203.  California courts

---

[5] Defendants' case citations on this point are thus inapposite, as the preempted claims in those cases did not "entail extra elements beyond the basic elements of copyright." *See, e.g., RDF Media Ltd. v. Fox Broad. Co.*, 372 F. Supp. 2d 556, 565-66 (C.D. Cal. 2005) (finding that UCL claim that defendants "engaged in unfair competition by reason of their infringing activity and misappropriation of [p]laintiff's intellectual property" was preempted) (internal quotation marks omitted).

have recognized that this remedy is best characterized as restitution. *See, e.g.*, *Fladeboe v. Am. Isuzu Motors, Inc.*, 150 Cal. App. 4th 42, 68 (2007) ("The measure for recovery for unfair business practices is restitution, not damages."). The California Supreme Court has explained that restitution is only appropriate when "money or property have been lost by a plaintiff, on the one hand, and . . . acquired by a defendant, on the other." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 336 (2011). Further, the UCL does not provide for the disgorgement of profits. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1266 (1992). Plaintiff's case citations do not hold otherwise. For example, the court in *Bank of the West* held that the UCL "authorizes courts to make such orders as may be necessary to **restore** . . . money or property . . . acquired by means of such unfair competition." *Id.* at 1266 (emphasis added). Money and property cannot be "restored" if it was never lost in the first instance. Here, Plaintiff does not allege that he has lost any money or property that was then acquired by Defendants. As such, Plaintiff is not entitled to restitution if he should prevail on his UCL claim.

    b. <u>Injunctive Relief</u>

Defendants also argue that injunctive relief is not appropriate because the First Amendment prohibits prior restraints on expressive work such as the Program. (Mot. 17.) Plaintiff concedes that injunctions on the broadcast or dissemination of television programs are rare, but nevertheless avers that "Defendants have not pointed to a protectable speech or press aspect of [the Program] that would render doing so impossible here." (Opp'n 16.)

While the Court recognizes prior restraints on expressive speech are disfavored,[6] they are not completely forbidden. For example, courts are empowered to enjoin the unauthorized distribution of copyrighted works, even though such an injunction constitutes a prior restraint. *See* 17 U.S.C. § 502(a). Here, Defendants have not established as a matter of law that Plaintiff would not be entitled to injunctive relief if he does prevail on his UCL claim. As such, dismissal of Plaintiff's UCL claim is not warranted.

    C. <u>Plaintiff's Breach of Contract Claim Against NBC and Universal</u>

Defendants contend that Plaintiff's claim for breach of contract against NBC and Universal fails because Plaintiff does not allege that Plaintiff communicated with anyone at NBC or Universal or that Plaintiff had actual or ostensible authority to bind NBC or Universal as their agent. (Mot. 17-19.)

---

[6] The Supreme Court has held that "[p]rior restraints on speech and publication are the most serious and the least tolerable on First Amendment rights." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.:  CV 12-09728 SJO (AJWx)          DATE:  June 18, 2013

A plaintiff must establish the following elements to establish a *Desny* claim for breach of an implied-in-fact contract: "the plaintiff prepared the work, disclosed the work to the offeree for sale, and did so under circumstances from which it could be concluded that the offeree voluntarily accepted the disclosure knowing the conditions on which it was tendered and the reasonable value of the work." *Grosso v. Miramax Film Corp.*, 383 F.3d 965, 967 (9th Cir. 2004) (citing *Faris v. Enberg*, 97 Cal. App. 3d 309, 318 (1979)).  As discussed above, Plaintiff has asserted a valid *Desny* claim in his FAC.  (FAC ¶¶ 70-76.)  Further, Defendants do not contest that Hurwitz is a proper defendant as to this claim.  At issue is whether Plaintiff has adequately alleged that Hurwitz had authority to act as NBC and Universal's agent such that they are also proper defendants with respect to Plaintiff's *Desny* claim.[7]

Under California law, there are two types of authority: actual and ostensible.  Actual authority "is such as a principal intentionally confers upon the agent, or intentionally, or by want of ordinary care, allows the agent to believe himself to possess."  Cal. Civ. Code § 2316.  Ostensible authority "is such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess."  Cal. Civ. Code § 2317.  The FAC alleges that "Hurwitz had actual or apparent authority to act on behalf of NBC and/or Universal during [the meeting between Plaintiff, Moss, and Hurwitz] and during [Hurwitz's] other interactions with [Plaintiff] and Moss.  Hurwitz indicated that he discussed [Plaintiff]'s Work with an 'exec' or either NBC or Universal."  (FAC ¶ 72.)  This, however, is nothing more than the kind of "threadbare recital[] of the elements of a cause of action, supported by mere conclusory statements" that the Supreme Court found to be insufficient in *Iqbal* and *Twombly*.  *Iqbal*, 556 U.S. at 678.  Notably, there are no factual allegations that NBC or Universal ever intentionally or negligently caused Hurwitz to believe that he was their agent.  There is also no factual allegation that NBC or Universal ever acted to cause Plaintiff to believe that Hurwitz was their agent.  The only factual allegation Plaintiff makes in support of his claim that Hurwitz had the authority to bind NBC and Universal is that Hurwitz discussed the Treatment "with an 'exec' or either NBC or Universal."[8]  (FAC ¶ 72.)  Hurwitz's

---

[7] Plaintiff does not allege that he ever directly communicated with NBC or Universal.

[8] Plaintiff also submits an online article that states that NBC has entered into new "development deals" with a number of television producers, including Hurwitz, and that these deals "allow [NBC] to partner with an array of stellar producers, such as . . . Hurwitz."  (Decl. of James W. Halter in Opp'n to Defs.' Mot. Ex. F, at 1.)  Plaintiff boldly asserts that this article demonstrates that Hurwitz is a "partner" of NBC in the legal sense of the term, and thus Hurwitz is an agent of NBC within the scope of this partnership.  (Opp'n 17.)  This argument is completely meritless.  Even if this article were not inadmissible hearsay, it does nothing to establish that Hurwitz and NBC are "partners" such that it is appropriate to impose agency liability.  Rather, it appears that the term "partners" was being used in a colloquial sense of the word.  Moreover, the article in question was published on May 9, 2012, some nine months after Plaintiff and Moss met with Hurwitz concerning the Treatment, and so it does nothing to establish the nature of the relationship between

CASE NO.:  CV 12-09728 SJO (AJWx)              DATE:  June 18, 2013

actions, however, are not relevant as to whether he had the authority to so bind NBC and Universal; rather, it is the actions of NBC and Universal that are the subject of inquiry.  It appears from Plaintiff's allegations that he assumed, or "believed," that Hurwitz had the authority to act on behalf of NBC and Universal.  (*See* FAC ¶ 25.)  This is not sufficient to find NBC and Universal liable.  *See Lindsay-Field v. Friendly*, 36 Cal. App. 4th 1728, 1735 (1995) (holding that "persons dealing with an assumed agent are bound at their peril to ascertain the extent of the agent's authority").

Accordingly, the Court finds that the FAC fails to allege that Hurwitz had the authority to bind either NBC or Universal, and thus Plaintiff's claim for breach of contract fails with respect to them.  Because it does not appear that Plaintiff can plausibly allege any set of facts that would support liability for breach of contract on the part of NBC and Universal, this claim is **DISMISSED WITHOUT LEAVE TO AMEND** as to these defendants.  *See Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1087-88 (9th Cir. 2002) (affirming district court's dismissal of complaint without leave to amend "[b]ecause any amendment would be futile").

>    D.    Plaintiff's Inducement of Breach of Contract Claim

Plaintiff alleges that "[i]n the event that it is determined that NBC and/or Universal are not parties to th[e] contract, NBC and Universal induced [Plaintiff] to breach that contract."  (FAC ¶ 78.)  To allege a claim for inducement of breach of contract, a plaintiff must allege "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach . . . of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage."  *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 55 (1998).

Defendants argue that this claim also fails because "the FAC fails to allege any facts supporting a claim that NBC and [Universal] intended to induce a breach of that contract."  (Mot. 19.)  Defendants are incorrect.  Plaintiff alleges that NBC and Universal were aware of the contract because "Hurwitz claimed that he informed NBC and/or Universal of the agreement."  (FAC ¶ 79.)  Plaintiff further alleges that "in connection with the development and production of [the Program], NBC and Universal intended to cause, and in fact caused, Hurwitz to breach his agreement with [Plaintiff] by encouraging Hurwitz to produce [the Program], which is a direct copy of [the Treatment], without compensating or crediting [Plaintiff]." (FAC ¶ 80.)  This allegation is more than a bare recital of the elements of Plaintiff's claim for inducement of breach of contract; it specifies that NBC and Universal had knowledge of the contract as well as the specific actions taken by NBC and Universal to induce the alleged breach.  *Cf. Athena Feminine Techs. Inc. v. Wilkes*, No. C 10-04868 SBA, 2011 WL 4079927, at *8 (N.D. Cal. Sept. 13, 2011) (dismissing claim for inducement of breach of contract because plaintiff failed to allege facts demonstrating that

---

Hurwitz and NBC or Universal at the time that the implied contract was allegedly formed.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: <u>CV 12-09728 SJO (AJWx)</u>          DATE: <u>June 18, 2013</u>

defendant knew of the contract or that defendant acted to intentionally induce a breach of contract). Plaintiff also alleges the other required elements for a claim of inducement of breach of contract. (FAC ¶¶ 77-81.) As such, dismissal of this claim is not warranted.

III.    <u>RULING</u>

For the foregoing reasons, Defendants' Motion is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's unlawful UCL claim fails to the extent that it is predicated solely on Defendants' alleged breach of contract. Plaintiff is not entitled to restitution should he prevail on his UCL claim. Plaintiff's claim for breach of contract is **DISMISSED WITHOUT LEAVE TO AMEND** with respect to NBC and Universal. Defendants' Motion is **DENIED** in all other respects. Defendants shall file an answer to the FAC **on or before July 8, 2013**.

IT IS SO ORDERED.